In re Deanna Nichols BOSWELL,
Debtor.

BLUE RIDGE BANK, Movant,

v.

Deanna Nichols BOSWELL, Respondent.

Bankruptcy No. 7–96–03696.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Feb. 27, 1997.

Dutton Olinger, Blacksburg, VA, for debtor.

Howard J. Beck, Roanoke, VA, for Blue Ridge Bank.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

The matter before the Court is whether the automatic stay of 11 U.S.C. § 362(a) should be annulled, thus validating a foreclosure sale of the Debtor's residence conducted by Blue Ridge Bank (the "Bank") in violation of the stay. The Bank filed its motion to annul pursuant to § 362(d)(1), and evidentiary hearings were held on November 12, 1996 and December 10, 1996. Both parties have supplied the Court with memoranda in support of their positions, and the matter is ripe for decision.

### Facts

The dispute between the Bank and the Debtor revolves around two adjustable rate notes, three bankruptcies, and three scheduled foreclosure sales. On May 25, 1993, Ms. Boswell obtained a $135,000.00 adjustable rate note from the Bank secured by a deed of

trust on her Pilot, Virginia, residence. Shortly thereafter, on October 15, 1993, the Debtor became obligated under a $45,000.00 adjustable rate note, also secured by a deed of trust on her residence. The Debtor was unable to make the requisite payments, and the Bank scheduled a foreclosure sale for January 5, 1996. However, on January 4, 1996, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code, and the sale was canceled.

On February 8, 1996, having failed to file schedules, a statement of affairs, or a plan, the Debtor moved to dismiss her case, and the motion was granted on February 12, 1996. The Bank set a second foreclosure sale for March 15, 1996, but the Debtor filed another Chapter 13 petition on March 14, 1996. Ms. Boswell again failed to provide schedules, a statement of financial affairs, or a plan, and the Bank was granted relief from the stay on April 18, 1996. Pursuant to the Debtor's motion, her case was dismissed without prejudice on April 25, 1996. The Bank filed a motion to alter or amend the April 25, 1996 order. As a result, an amended order was entered on May 22, 1996 which precluded the Debtor from filing a petition under Title 11 for 180 days from the entry of the original order of dismissal.[1]

The Bank scheduled a third foreclosure sale.[2] On that date, two officers of the Bank arrived at the courthouse in Floyd County, Virginia anticipating the sale of the Debtor's residence. The trustee under the deed of trust, the Debtor, and several potential bidders were also in attendance. Before the sale could commence, the Debtor presented the trustee with a letter from her attorney and a receipt from the Clerk of the Bankruptcy Court, both indicating that a petition for relief under Chapter 13 had been filed earlier in the day. The trustee immediately took this information and presented it to the two Bank officers. These three individuals then went into the Commissioner of Revenue's office to telephone the Bank's counsel and to decide upon a course of action.

Notwithstanding the automatic stay, the Bank's counsel urged the trustee to proceed with the foreclosure by announcing that the sale would be subject to Bankruptcy Court confirmation. The Bank's counsel also informed the trustee that he believed that he could get the stay annulled vis-a-vis the sale, and the Bank officers agreed to indemnify the trustee for any personal liability resulting from the sale. The trustee did not discuss the propriety of holding the sale with the Debtor or Debtor's counsel. Instead, after announcing the pendency of the bankruptcy proceeding and the automatic stay, the trustee went forward with the foreclosure. A high bid of $217,000.00 was received. The Bank's motion to annul then followed.

### Positions of the Parties

In support of its motion to annul, the Bank argues that the bankruptcy court has discretion to validate actions taken in violation of the stay. This discretion may be exercised when a petition has been filed in bad faith. In this case, the Bank states that such a finding of bad faith is supported by: (1) the number of petitions the Debtor filed in 1996, (2) the fact that each petition was filed on the eve of a foreclosure sale, and (3) the Debtor's failure to file schedules, a statement of financial affairs, or a plan in the first two cases. Finally, the Bank asserts that the trustee acted impartially in deciding to conduct the sale.

The Debtor, on the other hand, argues that there is no evidence that her current Chapter 13 petition was filed in bad faith. Rather, she points out that she has paid the required administrative fee, has made provisions for the remaining fees as provided by the Code, has timely filed her schedules and statement of affairs, and has filed a plan. She also argues that the trustee acted improperly in going forward with the sale, particularly in light of his consultation with the Bank and his failure to consult with her or her counsel. Finally, the Debtor states that she has offered evidence of changed circumstances

---

1. All parties to this proceeding agree that the 180th day was October 23, 1996.

2. The Bank candidly admits that it miscalculated the 180 day time period and scheduled the sale after expiration of the 180 day period set forth in the May 22, 1996 order.

since her dismissal of two previous Chapter 13 cases and offered credible testimony as to her reasons for both previous filings and dismissal of those cases. Therefore, the Debtor asks that the motion to annul be dismissed.

### Discussion

 Section 362(d) of the Bankruptcy Code authorizes a court to annul the automatic stay created by § 362(a).[3] Annulment under § 362(d) grants retroactive relief to a party who acted in violation of the stay; consequently, the stay is rendered a nullity vis-a-vis that party's actions. *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984); 3 *Collier on Bankruptcy*, ¶ 362.07[1], 362–76 (15th ed. rev. 1996) ("The use of the word 'annulling' suggests that relief from the stay may operate retroactively."). The statute provides little guidance on when such relief is appropriate; thus, many courts will annul the stay only when that course is consistent with general equitable principles. *In re Lipuma*, 167 B.R. 522, 526 (Bankr.N.D.Ill. 1994). *See also, In re Atlantic Ambulance Assocs.*, 166 B.R. 613, 615 (Bankr.E.D.Va. 1994) ("[T]he creditor seeking to validate an act taken in violation of the stay is asking the bankruptcy court to exercise its equitable power to balance the equities between the parties.").

 In balancing the equities, though, the significance of the automatic stay weighs heavily against the party seeking an annulment. The legislative history behind the Code makes clear that the automatic stay "is one of the *fundamental* debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions."

H.R.Rep. No. 95–595, at 340 (1972), 1978 U.S.C.C.A.N. 5963, 6296–97 (emphasis added). The import of the automatic stay, therefore, "demands that courts be especially hesitant to validate actions committed during the pendency of the stay." *Albany Partners*, 749 F.2d at 675. This cautious posture has been widely adopted. *See, e.g., Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir.1993) ("[W]e hold that actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances."); *Matter of Pinetree, Ltd.*, 876 F.2d 34, 38 (5th Cir.1989) (quoting above language from *Albany Partners*); *Atlantic Ambulance Assocs.*, 166 B.R. at 615 ("The fact that most of the cases hold actions in violation of the stay void indicates that there must be unique circumstances to justify annulment of the stay.").[4]

 Turning to the facts at hand, it is uncontroverted that the trustee was advised by the Bank and its counsel to proceed with the foreclosure sale of the Debtor's residence and that each was fully aware of Ms. Boswell's Chapter 13 petition. At the same time, the trustee chose not to consult with the Debtor, who was in attendance at the sale, or the Debtor's attorney, whose identity was known to the trustee. Instead, he received only the Bank's point of view and then obtained indemnification from the Bank for any personal liability resulting from the sale. Under Virginia law, a trustee under a deed of trust is a fiduciary for both the debtor and creditor and must treat them "with perfect fairness and impartiality." *In re Smith*, 99 B.R. 724, 731 (Bankr.W.D.Va.1989) (citing *Smith v. Credico Indus. Loan Co.*, 234 Va. 514, 362 S.E.2d 735, 736–37 (1987)).

The actions of the Debtor must also be considered. The Bank observes that this is

3. 11 U.S.C. § 362(d) provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay...."

4. An oft-cited example of when it *is* appropriate to grant an annulment is the situation where a creditor violates the stay but does so in good faith and without knowledge thereof. *Easley*, 990 F.2d at 905; *Pinetree*, 876 F.2d at 37; *Lipuma*, 167 B.R. at 526; 3 *Collier on Bankruptcy*,

¶ 362.07[1], 362–76 (15th ed. rev. 1996). While ignorance of the stay is not a prerequisite to obtaining relief under § 362(d), *Albany Partners*, 749 F.2d at 675 (where petition was not filed in good faith and debtor's asserted interest in subject property had previously been adjudicated and rejected, annulment was appropriate even though foreclosing creditor was aware of the stay), a creditor does act at its own peril when it proceeds in knowing violation of the stay. *In re Eden Assocs.*, 13 B.R. 578, 585 (Bankr.S.D.N.Y. 1981).

Ms. Boswell's third bankruptcy petition since January of 1996, that all three were filed on the eve of foreclosure, and that the first two cases were dismissed. Also, in a previous Chapter 13 case, the Bank was accorded relief from the stay. Such evidence, the Bank argues, supports a finding of bad faith and accordingly, cause exists for annulling the stay. *In re Oakbrook Village, Inc.,* 108 B.R. 838, 844 (Bankr.S.D.Ga.1989) (annulling the stay found to be appropriate when petition filed in bad faith).

When the Debtor's second petition was dismissed, however, an amended order of dismissal was subsequently entered. This order prohibited the Debtor from filing any petition under Title 11 for a period of 180 days from the entry of the original order of dismissal, or until October 23, 1996. *See* 11 U.S.C. § 109(g)(2). The Debtor filed her Chapter 13 petition on November 1, 1996, nine days *after* the prohibitory period had expired. In proceeding after October 23, the Debtor was acting in accordance with the Court's directive and with her rights under the Bankruptcy Code. Furthermore, at a hearing held on February 12, 1997, the Trustee reported that the Debtor is current in her Plan payments and that he is prepared to recommend confirmation.[5] Such evidence does not support a finding that the Debtor is abusing the bankruptcy process.

### Conclusion

Considering the specific facts of this case and taking into account both the fresh start policy of the Bankruptcy Code and the important role which 11 U.S.C. § 362 plays in the bankruptcy process, this Court declines to annul the automatic stay of § 362. Accordingly, it is

### ORDERED:

That the Motion to Annul of Blue Ridge Bank be, and it hereby is, DENIED.

---

5. The February 12, 1997 confirmation hearing was continued pending resolution of the Bank's motion to annul.