In re **LONG BAY DUNES HOME-OWNERS ASSOCIATION, INC., Debtor.**

Civ.A. No. 99–06930–W.

United States Bankruptcy Court, D. South Carolina.

Nov. 5, 1999.

Stanley H. McGuffin, Columbia, SC, for Debtor.

Barbara G. Barton, Columbia, SC, for John R. Ingram and Virginia B. Ingram.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion for Order Lifting the Automatic Stay to Allow Enforcement of State Court Judgments; Dismissing Bankruptcy; Requiring Action to Preserve Assets; or, in the alternative, Appointing a Chapter 11 Trustee (hereinafter "Motion") filed by John R. Ingram and Virginia B. Ingram (hereinafter "Ingrams") on September 17, 1999. Long Bay Dunes Homeowners Association, Inc. (hereinafter "Debtor" or "Association") filed an Objection to Response of Debtor–In–Possession (hereinafter "Objection") on September 27, 1999.

Based upon the evidence introduced at the hearing on the Motion and on the presentation of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT:

1. The Ingrams and Debtor are parties to an agreement involving property located in Myrtle Beach, South Carolina. In May of 1980, a horizontal property regime (hereinafter "Regime") was established in Myrtle Beach, pursuant to S.C.Code Ann. § 27–31–10 through –330, by the execution and recording of a Master Deed, Basic Lease Agreement, and Sub–Lease Agreement (collectively "Agreement").

2. Pursuant to the Agreement, certain property was transferred to the Regime by a fee simple transfer (hereinafter "Condominium Property"). Two other tracts of property containing another building (hereinafter "Ingram Property") and a pool (hereinafter "Pool Property") were transferred to the Regime by a fifty years lease. The Ingram Property was subleased back to them.

3. The Association was created for the purpose of maintaining the Regime. Its specific responsibilities include the payment of the insurance, taxes, and exterior maintenance of the Regime's property, the Ingram and Pool Properties, and the common areas. In order to perform such duties, the Association is to establish an annual budget contemplating such expenses. As an Association, it has the ability to assess its members in order to obtain the necessary funds to pay the various expenses.

4. Debtor did not fulfill its responsibilities pursuant to the Agreement for the years 1982, 1983, and 1984; resulting in litigation by the Ingrams against Debtor. Specifically, Debtor refused to budget dues or assess the members in order to obtain the necessary funds to pay for taxes, insurance, and maintenance as set forth in the Agreement. The Ingrams prevailed in the litigation and were eventually paid the judgment amount by Debtor.

5. Subsequently, Debtor did not pay the taxes for the Ingrams for the years 1987 through 1997 and did not fulfill its responsibilities as to insurance and maintenance expenses during that period. The Ingrams initiated further litigation against Debtor in the Court of Common Pleas for the Fifteenth Judicial Circuit and, once again, were successful in obtaining a judgment against the Association on September 28, 1998.

6. Debtor moved to reconsider the state court's order of September 28, 1998, resulting in an order of the state court, entered on February 2, 1999, reaffirming the judgment.

7. By separate state court order also on February 2, 1999, the Ingrams were awarded prejudgment interest, attorneys' fees, and costs; thereby increasing the judgment amount.

8. Debtor appealed both of the February 2, 1999 orders. During the appeal, the Ingrams became concerned about the status of the title of the individual homeowners' units and requested protection through the state court, which entered an order on June 21, 1999, providing that an

**804**

equitable lien existed against the individual homeowners in favor of the Ingrams.

9. As a result of Debtor's failure to properly prosecute its appeal, the appeal of the state court judgments and orders was dismissed, and the Ingrams were further awarded costs and attorneys' fees.

10. Thereafter, the Ingrams were forced to pursue Supplemental Proceedings in the state court because Debtor continued to refuse to pay the judgments held by the Ingrams. An order was entered on July 8, 1999, requiring Debtor to assess dues or charges against its members within five days in a sufficient amount to pay the Ingrams' judgment and file liens within twenty days for those members failing to make payment.

11. Debtor's motion to reconsider the July 8, 1999 order was denied on August 5, 1999. The August 5, 1999 order also required that Debtor assess its members by August 9, 1999 and file liens within twenty days for those members failing to make payment. Furthermore, it provided that failure of the Association to do so would be punishable by contempt. The state court provided that the Assessment Notice would consist of its July 8, 1999 order; the August 5, 1999 order; and a cover letter, calculating each member's share.

12. On August 9, 1999, Debtor mailed an assessment notice to its members, which failed to comply with the state court's order and which advised its members that a bankruptcy would be filed "sometime this week".

13. The Association filed for relief under Chapter 11 of the Bankruptcy Code on August 17, 1999.

14. According to the initial schedules and statements filed by Debtor in connection with its bankruptcy case, Debtor owns no real property and limited personal property, including cash of approximately $3,450. The Debtor has no secured creditors and the following four unsecured creditors:

a) The Ingrams with a debt of approximately $210,000;

b) The City of Myrtle Beach with water bills of approximately $730;

c) Santee Cooper with a utility bill of $187.50; and

d) A pool maintenance bill of approximately $52.

In addition, it appears that Debtor's monthly expenses exceed its monthly average income.

15. At the time of the hearing on the Motion, the liens against Debtor' members had been mailed for filing but had yet to be filed in Horry County.

## CONCLUSIONS OF LAW

Even though the Bankruptcy Code does not specifically provide for a "good faith filing" requirement, it is an implicit prerequisite for a bankruptcy petition. *See Carolin Corp. v. Miller,* 886 F.2d 693, 698 (4th Cir.1989). Failure to meet the prerequisite may constitute grounds for dismissal. Section 1112(b) provides that a Chapter 11 bankruptcy may be dismissed "for cause". 11 U.S.C. § 1112(b).[1] While the term "cause" is not defined in the Bankruptcy Code, it has been examined through case law, which provides that a bad faith filing is sufficient cause to warrant dismissal of the case. *See In re Smith,* 848 F.2d 813, 816–17 (7th Cir.1988). In *Carolin,* the Fourth Circuit Court held that cause exists for the dismissal of a Chapter 11 case if any reorganization is objectively futile and the case was filed in subjective bad faith.

The objective futility inquiry focuses on whether "there is embodied in the petition 'some relation to the statutory objective of resuscitating a financially troubled [debtor].'" *Id.* at 701 (quoting *In re Coastal Cable TV, Inc.,* 709 F.2d 762, 765 (1st Cir.1983)). The evidence before this Court indicates that the Association has no real property or other significant assets; its primary asset at the time of filing consisted of approximately $3,450 in cash derived from its members to be used to pay

1. Further references to the Bankruptcy Code will be by section number only.

Regime operating expenses. The verified schedules and statements filed by the Debtor indicate that its monthly expenses exceed its average monthly income. It is evident that the Association is governed and controlled by a board comprised of certain of its members who have repeatedly refused to allow it to assess charges necessary to pay its largest claim, the Ingrams' judgments. The only way Debtor can fund a reorganization is to do the very thing it has been ordered to, but refuses to do; that is assess and collect significantly higher charges from its members. There appears to be no valuable ongoing business activity to protect by the filing of the bankruptcy case.

This Chapter 11 case is essentially a continuation of a longstanding two-party dispute between the Ingrams and the Association. The requirements for the confirmation of a Chapter 11 plan set forth in § 1129 cannot be met without an impaired class voting in favor of the Plan. The Ingrams' claim is deemed impaired because it is apparent that Debtor does not intend to treat their claim as ordered by the state court. Considering the minimal nature of other debts listed by Debtor, it appears that the Ingrams will have the only truly impaired claim in this case. The Ingrams have indicated that they will not vote in favor of any plan proposed by Debtor. Therefore, it appears that no confirmable plan can be proposed. From the evidence presented, it appears that there is no hope of a successful Chapter 11 reorganization. Thus, the Court concludes that the objective prong of the test has been met.

■ On the other hand, the subjective test inquires into the petitioner's motive for filing the bankruptcy petition, and it is designed "to determine whether the petitioner's real motivation is 'to abuse the reorganization process' and 'to cause hardship or to delay creditors.'" *Id.* at 702 (quoting *Meadowbrook Investors' Group v. Thirtieth Place Inc. (In re Thirtieth Place, Inc.),* 30 B.R. 503, 505 (9th Cir. BAP 1983)). In determining whether the case should be dismissed on the allegations of bad faith, the court must consider the "totality of the circumstances" and reach a conclusion on the overall indicia presented. *Id.* at 701; *see also In re Dunes Hotel Assoc.,* 188 B.R. 162, 169 (Bankr.D.S.C. 1995).

■ Determining bad faith is a fact intensive inquiry which involves a review of the following factors:

1. The debtor has one asset;

2. Secured creditors' liens encumber the asset;

3. There are generally no employees except for the principals and there is no ongoing business activity;

4. The debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments;

5. There are few, if any, unsecured creditors whose claims are relatively small;

6. There are allegations of wrongdoing by the debtor or its principals;

7. The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;

8. The debtor is afflicted with the "new debtor's syndrome" in which a one asset entity is credited or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors;

9. There is no realistic possibility of reorganization of the debtor's business;

10. The reorganization essentially involves a two-party dispute; and

11. Bankruptcy offers the only possibility of forestalling loss of the property.

*In re Dunes Hotel Assoc.,* 188 B.R. at 171.

■ Based upon such a review, the Court also finds that there is sufficient evidence to meet the test for subjective bad faith. Debtor has wrongfully refused to budget and collect the amounts to pay for taxes, insurance, and maintenance fees for the Ingram property for 1982, 1983, and 1984; resulting in state court litigation

which was resolved in the Ingrams' favor. Debtor subsequently refused to budget dues or assess the members to pay the expenses pursuant to the Agreement since 1987, resulting in additional litigation. Although it has been consistently unsuccessful in the litigation in the state court, Debtor has filed several Motions to Reconsider and has filed an appeal which was dismissed due to Debtor's failure to follow the South Carolina Appellate Court Rules. Debtor's continuous refusals to pay the judgments has required Supplemental Proceedings in which it has been ordered to take certain action, and it has been threatened by the state court with contempt sanctions as a result of its failure to act. In short, Debtor has taken every action available to it to delay or avoid payment to the Ingrams. From the evidence now before this Court, it is clear that Debtor's main purpose in filing the Chapter 11 bankruptcy was to evade having to pay the debt owed to the Ingrams. By examining the totality of the facts of this case and considering the *Carolin* and *Dunes* factors set forth above, the Court finds that all of them, with the exception of number eight, indicate that the Chapter 11 bankruptcy was filed in bad faith; thus warranting the dismissal of the case.

The Court further concludes that other grounds for dismissal exist pursuant to § 305. Section 305 provides in part that a case may be dismissed at any time if "the interests of creditor and the debtor would be better served by such dismissal or suspension." Because the issues in this case appear to be primarily between two parties with a long history of litigation in the state court and numerous orders have already been entered by the state court dealing with the issues, abstention is appropriate. In the interest of comity and because the interests of the creditors and Debtor in this case in avoiding delay and the significant expenses associated with a bankruptcy case would be better served by dismissal, this Court shall dismiss the case pursuant to § 305.

The Ingrams also moved to lift the Automatic Stay to allow them to pursue the enforcement of the state court judgments. Section 362(d) provides that, after notice and a hearing, a court can grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." A bankruptcy judge has broad discretion to determine what constitutes "cause" sufficient to warrant relief from the stay, and the decision to lift the stay can be overturned on appeal only if the judge's discretion is abused. *See In re Fowler*, 92–72920–B (Bankr.D.S.C.1993) (citing *Central Fidelity Bank v. Coogan (In re Coogan)*, 803 F.2d 1180, 1986 WL 17896 (4th Cir.1986)). The Court concludes that the evidence before it as stated above in regard to the *Carolin* test for dismissal of the petition, also constitutes sufficient cause to grant relief from the stay.

For the reasons stated herein, it is

ORDERED that the relief from the Automatic Stay is granted.

It is further ORDERED that this case is dismissed.

IT IS SO ORDERED.