**Clyde T. SHAW and Doris Lederer, Appellants,**

v.

**David EHRLICH, Appellee.**

**Akemi Takayama Wiencko, Appellant,**

v.

**David Ehrlich, Appellee.**

Nos. 7:03CV00254, 7:03CV00252.

United States District Court, W.D. Virginia, Roanoke Division.

June 20, 2003.

---

Howard J. Beck, Jr., Gentry, Locke, Rakes & Moore, Roanoke, VA, for Appellants.

Richard Clifford Maxwell, Woods, Rodgers & Hazlegrove, PLC, Roanoke, VA, for Appellee.

## MEMORANDUM OPINION

TURK, Senior District Judge.

This bankruptcy appeal grew from the seeds of a dispute among members of the Audubon Quartet ("Quartet"), a classical string quartet and a nonprofit corporation incorporated in Pennsylvania. The members of the group at the time the dispute arose, David Ehrlich ("Ehrlich"), Clyde T. Shaw ("Shaw"), Doris Lederer ("Lederer"), and Akemi Takayama Wiencko ("Wiencko"), were all officers and directors of the corporation. Since 1981, the Quartet has served as an in-residence group at the Virginia Polytechnic Institute ("VPI"), and, after 1997, each member of the Quartet had been employed as an associate professor at VPI.[1]

On February 21, 2000, as a result of longstanding tensions between Ehrlich and other members of the Quartet, Ehrlich's employment in the Quartet as an officer, director and first violinist was terminated.

---

1. VPI ended its relationship with the Quartet on May 4, 2000.

On February 23, 2000, Ehrlich filed suit against the remaining members of the Quartet, Shaw, Lederer, and Wiencko (collectively "Debtors"), in the Circuit Court of Montgomery County, Virginia. The suit alleged that Ehrlich's employment had been terminated without the requisite corporate formalities, and it sought a preliminary injunction to prevent the Quartet from performing. The court subsequently awarded the injunction on an *ex parte* basis. The lawsuit was eventually dismissed on February 22, 2001.

On May 30, 2000, Ehrlich filed a second suit in equity in the Pennsylvania Court of Common Pleas, again alleging wrongful termination. This litigation lasted for almost a year and a half, eventually concluding in a trial of several days. On October 12, 2001, the Pennsylvania state court issued an Opinion, Adjudication, and Decree Nisi, finding the Audubon Quartet Corporation and the Debtors jointly and severally liable in the total amount of $611,119.24.

Ehrlich and the Debtors filed timely motions for post-trial relief from the judgment of the Pennsylvania trial court. Neither motion challenged the central findings of the court relating to the fiduciary duties of the parties and the calculation of damages. Ehrlich's primary request was for additional fees and costs. The Debtors' motion objected to Ehrlich's request for additional fees, and it asked the court to add additional exhibits to the record, lift the preliminary injunction, and modify the Decree Nisi to reflect that a certain computer program was the property of one of the individual Debtors.

On November 30, 2001, following a hearing on the motions for post-trial relief, the Debtors filed a supplemental motion for post-trial relief, challenging the court's finding of liability and the amount of damages. In early December of 2001, the court denied the supplementary motion, as it had not been filed within ten days of the entry of the Decree Nisi as required by Rule 227.1(c)(2) of the Pennsylvania Rules of Civil Procedure.

On December 12, 2001, Shaw and Lederer, jointly, and Wiencko, individually, filed petitions for relief in bankruptcy under Chapter 13 of the United States Bankruptcy Code with the United States Bankruptcy Court of the Western District of Virginia, Judge Ross Krumm presiding.[2] Notice of the bankruptcy filing was mailed to the Pennsylvania court, and the notice was docketed on December 20, 2001, in the records of the Pennsylvania litigation.

On the same day that notice of the bankruptcy proceeding was docketed in Pennsylvania, the trial court handed down an Adjudication and Final Decree. In the Final Decree, the court considered the post-trial motions filed by the parties and found that all arguments concerning the central aspects of the litigation, including the court's rulings on the nature of the business entity, Ehrlich's interest in the business, and the total sum of damages, had been waived by the parties. Consequently, the court affirmed its award in the Decree Nisi of $611,119.24 in favor of Ehrlich.

After the Pennsylvania court issued final judgment, the primary conflict between Ehrlich and the Debtors found a new home in bankruptcy court. The Debtors filed a motion on January 3, 2002, asking that the bankruptcy court declare the Pennsylvania trial court's final order null and void in violation of the automatic stay that arose when the Debtors filed for bankruptcy on December 12, 2001. On January 11, 2002, Ehrlich filed a motion to dismiss the Debtors' cases, arguing that the Debtors were

---

**2.** The Audubon Quartet Corporation also filed a petition for relief under Chapter 7.

not eligible for relief under Chapter 13, as their debt exceeded the ceiling established by section 109(e) of Title 11.

In an order dated April 3, 2002, Judge Krumm ruled that the debt established by the judgment of the Pennsylvania court was liquidated and readily determinable, and, as it exceeded the debt ceiling set forth in section 109(e), he dismissed the Debtors' cases. Once the petitions were dismissed, Ehrlich docketed the Pennsylvania judgment against the Debtors in Montgomery County, Virginia, on April 9, 2002, and proceeded with his collection efforts.

On April 15, 2002, the Debtors filed a Motion to Alter or Amend the April 3, 2002, order, and again asked the bankruptcy court to hold the Pennsylvania court's post-petition orders null and void. In the alternative, the Debtors requested that the court convert the Chapter 13 petitions that had been dismissed to cases under Chapter 11. While considering the motion, the court issued a stay, effective May 23, 2002, preventing all parties from enforcing or executing any judicial liens or levies against the Debtors. The court then granted the Motion to Convert on May 31, 2002, but it did not vacate its April 3, 2002, dismissal order.

On October 31, 2002, the bankruptcy court finally granted the Debtors' request that the bankruptcy court declare the Pennsylvania court's actions null and void in violation of the automatic stay. However, Ehrlich moved the court to reconsider, and, by order dated November 29, 2002, the court granted the motion in light of its decision in *In re McKay,* 268 B.R. 908 (Bankr.W.D.Va.2001). In this order, the bankruptcy court held that no automatic stay ever existed in the Debtors' bankruptcy cases, as the Debtors were ineligible for relief under the chapter in which they filed for bankruptcy.

On December 6, 2002, the Debtors requested that the bankruptcy court alter or amend its judgment concerning the automatic stay. On January 7, 2003, the bankruptcy court denied the request, and this appeal followed soon after.

**I**

On appeal, the appellant Debtors ask this Court to overturn three orders of the bankruptcy court. The first and second orders complained of, dated January 7, 2003, and November 29, 2002, held that no automatic stay arose when the Debtors originally filed for bankruptcy. The third order, dated October 31, 2002, held that the bankruptcy court's dismissal order terminated the automatic stay.

Thus, there are two questions to be resolved on appeal: (1) Whether an automatic stay arose when the Debtors filed a petition for bankruptcy under Chapter 13 and, if a stay was in place, what the effect of the stay was on the final judgment of the Pennsylvania court; and (2) whether an automatic stay was in place between April 3, 2003, the date the bankruptcy court dismissed the Chapter 13 petition, and May 23, 2002, the date the bankruptcy court granted a stay to determine whether the Debtors' Chapter 13 petitions should be converted to cases under Chapter 11.

Both parties agree that the bankruptcy court's findings of facts are reviewed for clear error, *see* Bank. R. 8013, while the bankruptcy court's conclusions of law are reviewed *de novo. See In re Southeast Hotel Properties Ltd. P'ship,* 99 F.3d 151, 154 (4th Cir.1996); *In re Suthers,* 173 B.R. 570, 572 (W.D.Va.1994).

**A**

■ The first question to be dealt with on appeal concerns the bankruptcy court's final determination that no automatic stay

arose upon the Debtors' filing for bankruptcy under Chapter 13 on December 12, 2002.

In an order dated October 31, 2002, the bankruptcy court held that the Pennsylvania state court violated the automatic stay that arose on December 12, 2001, when the Debtors filed for Chapter 13 relief. However, on November 29, 2002, the court quickly reversed itself, holding that no automatic stay arose when the Debtors filed for bankruptcy, as the Debtors were ineligible for Chapter 13 relief and therefore were not entitled to the protections of the automatic stay. The bankruptcy court affirmed this ruling in an order dated January 7, 2003, when it refused to alter or amend its holding.

Section 362 of the Bankruptcy Code governs the application and effect of the automatic stay in bankruptcy. Section 362(a) states, "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities...." 11 U.S.C. § 362(a). A plain reading of this section leads to the obvious conclusion that the automatic stay arises as soon as a "petition" in bankruptcy is filed. Unfortunately, this section of the Code does not define the word "petition," and readers of the Code are forced to look elsewhere to determine the word's meaning. Ehrlich rightly suggests a study of sections 301, 302, and 303, as section 362(a) requires petitions to be filed "under" these sections in order for a petition to operate as a stay.[3]

A look at the plain language of sections 301 and 302 of the Code explains the difficulty that the bankruptcy court had with this question of law. Sections 301 and 302 discuss the procedure for commencing a bankruptcy case. In so doing, these sections require a "petition" to be filed "under such chapter by an entity that may be a debtor under such chapter" before a case is commenced. Thus, sections 301 and 302 appear to be much more limited in scope than 362(a), as sections 301 and 302 require a debtor seeking to begin a case in bankruptcy to be eligible "under such chapter" in which the debtor files. With this language in mind, the bankruptcy court reasoned that the effect of its finding that the Debtors failed to qualify under Chapter 13, the chapter under which they filed for bankruptcy, was to retroactively remove the automatic stay as if it never existed, as the Debtors never filed a qualifying "petition." (November 29, 2002, Decision and Order at 2–3.)

The problem with the bankruptcy court's conclusion is that the plain language of section 362(a), in requiring a petition to be filed "under section 301 or 302," is susceptible to another interpretation. Sections 301 and 302 do not actually define "petition." Instead, they define how a "case" in bankruptcy is commenced. While a case is only commenced by a debtor eligible under the chapter in which he files, section 362(a) only requires that a "petition" be filed under section 301 or 302 to invoke the automatic stay.[4] This requirement can be understood as a simple pleadings requirement, where the Code asks the debtor when filing a petition to state whether the debtor is filing individually, under section 301, jointly, under section 302, or involuntarily, under section 303. Nowhere does the Code define "petition" to require that a court take an initial

---

3. "Petition" is defined in the Code's definitional section to be a "petition filed under section 301, 302, 303, or 304 of this title ... commencing a case." 11 U.S.C. § 101(42).

4. It is important to note that the Code treats the commencement of a case and the filing of the petition as separate events. *See, e.g.,* 11 U.S.C. § 348(a).

look at the eligibility of a debtor under a particular chapter before the automatic stay comes into effect.

Because the plain language of the Code is ambiguous, it is necessary to examine the automatic stay provision in its context within the Bankruptcy Code to determine the meaning that best comports with the overall operation of the Code. *See Brown & Williamson Tobacco Corp. v. Food & Drug Admin.*, 153 F.3d 155, 162 (4th Cir.1998). An examination of the other sections of Title 11 reveals a significant degree of inconsistency between the bankruptcy court's interpretation of the automatic stay and the overall structure and operation of the Code.

An example of this inconsistency is the manner in which the bankruptcy court's interpretation adds language and meaning to the automatic stay provision of the Code, section 362, that was not included by Congress in drafting Title 11. After listing what actions are stayed by the filing of a petition in bankruptcy, section 362(b) enumerates a series of exceptions, sixteen in all, in which the filing of a petition does not operate as a stay. Absent from this decidedly exhaustive list is the failure of a debtor to qualify under the particular chapter in which the debtor files for bankruptcy. When the bankruptcy court decided to require that the debtor qualify under the chapter in which he files before an automatic stay can come into effect, it grafted another exception onto the list expressly provided by Congress in the Code.[5]

In addition to adding to the Code, the bankruptcy court's interpretation of the automatic stay provision makes other sections of the Code appear meaningless. Section 362, in dealing with the effect of an automatic stay, provides a specific mechanism in subsection (d) that allows a creditor to come into court and request relief from the automatic stay: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay ... for cause...." 11 U.S.C. § 362(d)(1). In subsection (d), the Code places the burden on creditors to request relief from a stay, which is only granted "after notice and a hearing." In addition, the subsection provides that the four methods of relief from the stay that the bankruptcy court may provide are "terminating, annulling, modifying, or conditioning" the stay. *Id.* These specified forms of relief suggest that a court, in providing a creditor relief from an automatic stay, may terminate the stay or even annul the stay retroactively. However, while the court can provide relief from the stay, section 362(d) suggests that the stay exists and remains in place until a creditor moves for relief.

Another section of Title 11 that is rendered superfluous by the bankruptcy court's interpretation is section 348. Section 348, titled "effect of conversion," governs the procedures involved in converting a case from one chapter of Title 11 to another. Section 348(a) states that when a bankruptcy judge converts a case, the con-

---

**5.** This judicially manufactured exception threatens to dwarf all the other exceptions expressly included in section 362(b) by Congress, as the exception would require courts to determine a debtor's eligibility under a particular chapter before the automatic stay could come into effect. In other words, rather than looking for exceptions from an automatic stay that is already in place under 362(b), courts would examine a debtor's eligibility to decide whether an automatic stay ever comes into existence in the first place. Such an approach renders the stay provided by Congress in the Bankruptcy Code dependent on the decision of bankruptcy judges, making the stay in 362(a) anything but "automatic" upon filing.

version "does not effect a change in the date of the filing of the petition." 11 U.S.C. § 348(a). Accordingly, when a debtor files a petition under a particular chapter, and the bankruptcy court later converts the case to one under another chapter, the date of the filing of the petition, and therefore the date of the automatic stay, remains the date of the original filing and not the date of conversion. *See In re Stanton*, 303 F.3d 939, 949 (9th Cir.2002) (holding that conversion has no effect on the automatic stay that arose when the original petition was filed); *In re State Airlines, Inc.*, 873 F.2d 264 (11th Cir.1989) (holding that the automatic stay and relief from the automatic stay is unchanged by conversion); *Johnson v. Garden State Brickface and Stucco Co.*, 150 B.R. 617, 618–19 (E.D.Pa.1993); *In re Voron*, 157 B.R. 251, 252 (Bankr.E.D.Va. 1993) (holding that conversion does not create a new automatic stay); *In re Germansen Decorating, Inc.*, 149 B.R. 522, 527 n. 7 (Bankr.N.D.Ill.1993). If Congress intended that the Code be read so that no case and no automatic stay arises when a petition is filed by a debtor ineligible under the chapter in which he files, it is unlikely that Congress would have allowed courts to convert a supposedly non-existent case rather than require debtors to refile under a different chapter. Even more inconsistent with such an interpretation would be Congress's mandate in section 348(a) that the automatic stay date back to the date of the original filing rather than the date of conversion, as the automatic stay would then protect the debtor during the initial period in which the debtor was ineligible for relief.

The only interpretation of the automatic stay provision of the Bankruptcy Code that meshes with the overall structure and operation of the Code is therefore one that understands the automatic stay to arise immediately upon the filing of the bankruptcy petition. Such an understanding of the automatic stay is also supported by an examination of the Code's policy and purpose.[6] The automatic stay is one of the most vital protections of the bankruptcy system. *See In re Avis*, 178 F.3d 718, 721 (4th Cir.1999); *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir.1988). As such, courts have given a broad interpretation to the scope of the stay. *See Grady*, 839 F.2d at 200; *In re Simonini*, 282 B.R. 604, 608 (W.D.N.C.2002). The stay protects debtors, as well as creditors, by providing debtors "a breathing spell" from collection efforts and promoting "orderly and fair" distribution among creditors. *See Simonini*, 282 B.R. at 608. Without the protections of the automatic stay, creditors would engage in a race to collect from a debtor before a decision could be made by a bankruptcy court. The result would be an impoverished debtor and a system that rewarded the fastest, but not necessarily the most deserving, creditors.

If the automatic stay were not in fact "automatic" upon the filing of a petition, but instead relied on a decision of a bankruptcy court as to the merits of the debtor's petition, the race to collect that Congress feared in the absence of an automatic stay could still occur. Under the bankruptcy court's analysis of the automatic stay, no party would be certain that the debtor is deserving of the protections of the stay until a court rules on the merits of the petition. The burden would be on the debtor to petition the court and prove his eligibility under the chapter in which he filed. Until the

---

**6.** "[W]hen the plain meaning of the Code is ambiguous or inconclusive," courts are required to "resort to the policy and purpose behind the Bankruptcy Code." *In re Merry–Go–Round Enterprises, Inc.*, 180 F.3d 149, 162 (4th Cir.1999).

debtor acted, creditors could claim ignorance as to the debtor's eligibility and act to collect on their claims in hopes that the bankruptcy court would find no merit in the debtor's petition. Thus, rather than providing the debtor with automatic breathing space, the Code would pressure the debtor to file correctly in the first instance or risk losing the protections of Title 11 due to the actions of several unscrupulous creditors. *Cf. In re Flores,* 291 B.R. 44, 61–62 (Bankr.S.D.N.Y.2003) ("A blanket rule that a filing ... does not invoke the automatic stay has been and will be construed by ... creditors as authorization to proceed with state law remedies notwithstanding that the debtor has filed a petition with the bankruptcy court. Proceeding to judgment, garnishment, foreclosure sale, eviction and other creditor remedies may have grievous consequences for not only the debtor but other creditors as well.").

The Fourth Circuit has recognized the importance of the automatic stay, and has stated that the stay comes into existence "automatically" and "immediately" upon the filing of a petition in bankruptcy. *In re Looney,* 823 F.2d 788, 790 (4th Cir. 1987); *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 996 (4th Cir.1986). The Fourth Circuit has not made exceptions to the immediate and automatic application of the stay, even in cases of a petitioner seeking to cause creditors hardship or delay by abusing the protections of the bankruptcy system and filing in bad faith. *See Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir.1989) (fashioning a narrow, two-prong test to determine when a creditor's motion to dismiss a bankruptcy petition filed in bad faith under Chapter 11 should be granted at the initial stages of a bankruptcy proceeding). In *Carolin,* the Fourth Circuit debated whether bad faith filings should be dismissed at the early stages of the bankruptcy process due to the clear

ineligibility of the bad faith petitioner for relief, but the court never doubted that, until the case was dismissed, the automatic stay existed to protect the debtor. *See id.* at 695 ("On December 3, 1986—fifty minutes before a scheduled foreclosure sale under the deed of trust—the company filed for Chapter 11 protection. The filing automatically stayed foreclosure, 11 U.S.C. § 362(a), triggering the present dispute between Carolin and Miller over the company's ultimate eligibility for protection under the bankruptcy statute.").

If the Fourth Circuit views bad faith petitioners as eligible for the protections of the automatic stay until their petitions are dismissed, mistaken filers who are eligible for some form of relief under Title 11 but file under a different chapter should certainly be protected by the automatic stay until a bankruptcy court reaches the merits of their petitions. *Cf. In re Tatsis,* 72 B.R. 908, 910 (Bankr.W.D.N.C.1987) (dismissing the argument that a debtor's filing under the incorrect chapter makes the filing a nullity). The Debtors presently before the court are much more sympathetic than the clearly ineligible, bad faith petitioner in *Carolin.* The bankruptcy court found that the Debtors were eligible for some form of bankruptcy relief, eventually converting the Debtors' cases from Chapter 13 to Chapter 11. In addition, the decision of the bankruptcy court dismissing the Debtors' petitions under Chapter 13 was not a simple one, as it took the court twelve pages to explain why it considered the Debtors' debt to be liquidated and therefore above the eligibility limit for Chapter 13 debtors. (Order and Decision April 3, 2002 at 6–17.) Such a complex decision rejects any notion that the Debtors filed in bad faith. Therefore, under the Fourth Circuit's reasoning in *Carolin,* the Debtors' mistaken filing under Chapter 13 should have given rise to an auto-

matic stay until Ehrlich petitioned the court for relief from the stay.

Before his decision in the present case, Judge Krumm appeared to agree with the Fourth Circuit that the automatic stay comes into existence immediately and automatically regardless of the merits of a petition filed by a debtor. In the case of *In re Boswell,* 206 B.R. 421 (Bankr. W.D.Va.1997), a debtor filed three successive Chapter 13 petitions to prevent the foreclosure sale of her house. The first two times the debtor filed, she failed to take any action on the case and the case was dismissed. *Id.* at 422.[7] When the debtor filed for bankruptcy a third time in yet another attempt to stall a foreclosure sale, the creditor bank decided to ignore the bankruptcy filing and sell the house. *Id.*

Judge Krumm, rather than determining whether the debtor was eligible under the chapter in which she filed and thus eligible for an automatic stay, looked to section 362(d) of Title 11 to determine whether cause existed to retroactively annul the automatic stay with respect to the sale of the house. *Id.* at 423. Judge Krumm determined that evidence existed to support a finding of bad faith in filing, but he refused to annul the stay due to the "fundamental" importance of the automatic stay to the workings of the bankruptcy system. *Id.* at 423, 424.

The importance of Judge Krumm's decision in *Boswell* lies not in the result of the case but in his unwavering recognition of the existence of an automatic stay despite the debtor's multiple bad faith filings. Each time that the debtor filed a bankruptcy petition, Judge Krumm found that an automatic stay existed until the creditor moved for dismissal of the case, and there-by recognized that an automatic stay arises immediately upon the filing of a petition in bankruptcy, even when a debtor is ineligible for relief under the chapter in which she filed. *Id.* at 422. In addition, Judge Krumm demonstrated how a court could protect creditors from the grant of an automatic stay to ineligible debtors through the use of the annulment remedy specified in section 362(d) of the Code.

In the present case, Judge Krumm initially ruled that an automatic stay arose when the Debtors filed their original petition in bankruptcy, and he declared the orders of the Pennsylvania state court entered after the filing of the Chapter 13 petition to be void. (Decision and Order, October 31, 2002, at 5.) However, when Ehrlich asked the bankruptcy court to reconsider its decision, relying on an earlier decision of the court in *In re McKay,* 268 B.R. 908 (Bankr.W.D.Va.2001), the court reversed itself and ruled that no automatic stay arose when the Debtors filed for bankruptcy. In his arguments before this Court, Ehrlich again relies on Judge Krumm's ruling in *McKay* to support the bankruptcy court's ruling that debtors ineligible under the chapter in which they file do not receive the protections of the automatic stay.

In *McKay,* Judge Krumm held that a debtor who violated section 109(g) of the Bankruptcy Code by filing for bankruptcy within 180 days of a voluntary dismissal of a previous bankruptcy case was not eligible for the protections of the automatic stay. *Id.* at 912; *see also Rowe v. Ocwen Federal Bank & Trust,* 220 B.R. 591 (E.D.Tex.1997); *In re Hollberg,* 208 B.R. 755 (Bankr.D.D.C.1997); *In re Prud'Homme,* 161 B.R. 747 (Bankr.E.D.N.Y.1993);

---

7. After the second filing was dismissed, Judge Krumm entered an order preventing the debtor from filing for a period of 180 days. The third filing occurred shortly after the expiration of this 180–day period.

*Miller v. First Federal Sav. and Loan Ass'n of Monessen*, 143 B.R. 815 (Bankr. W.D.Pa.1992).[8] Section 109 of Title 11 determines a debtor's eligibility to file for bankruptcy. Subsection (g) of 109 provides that "[n]o individual may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if" the case was dismissed for the failure of the debtor to prosecute the case, or the case was dismissed at the debtor's request. Section 109(g) is a simple procedural mechanism for bankruptcy courts to use in preventing multiple filings by debtors intent on abusing the protections of the automatic stay. As the language of the section shows, all a court has to do to determine whether a debtor is wholly ineligible under Title 11 is count the number of days between the last dismissal and the filing of the current case.

The courts that have found no automatic stay for filings in violation of 109(g) have narrowly restricted such a ruling to the context of 109(g). There are two reasons why courts have used 109(g) to carve out a narrow exception to the immediacy of the automatic stay: (1) the ease and simplicity with which a court may use section 109(g) to make an initial determination of a debtor's eligibility under Title 11 as a whole, *see In re Prud'Homme*, 161 B.R. at 751 ("Where a debtor's lack of entitlement under section 109(g) is clear and unquestioned, the filing is void ab initio and there exists no stay for the court to address."), and (2) to protect against bad faith filings,

see *In re McKay*, 268 B.R. at 911 n. 6 ("The purpose of [section 109(g)] is to provide the courts with a mechanism to limit and control abusive and serial filings."); *Rowe*, 220 B.R. at 592 ("[Debtor's] repeated filing of Chapter 13 petitions in violation of the 180–day ban imposed by 11 U.S.C. § 109(g) demonstrated a lack of good faith...."); *In re Miller*, 143 B.R. at 820 ("The purpose of § 109(g)(1) of the Code is to *prevent* the reimposition of stays and controls under the Code when the prior performance of the debtor was willfully inconsistent with their responsibilities to the court."). No case cited by Ehrlich has extended this reasoning to cases dismissed under any·other subsection of section 109[9], and the present case is a poor test case for such an expansion.

In dismissing the Debtors' Chapter 13 petitions, the bankruptcy court found the Debtors ineligible under Chapter 13 as their levels of debt exceeded the maximum specified in section 109(e). The two factors that have motivated courts to carve out an exception to the immediate nature of the automatic stay under 109(g), judicial convenience and protection against bad faith filings, do not exist in dismissing a case under section 109(e). First, section 109(e) lists a specific range of debt that a party must meet to be eligible to file under Chapter 13. 11 U.S.C. § 109(e). Determining a party's debt, and the nature of that debt, is a much more complex task than counting the days between filings under 109(g).[10] This complexity can be seen

8. The case law carving out an exception to the automatic stay under section 109(g) is by no means unquestioned. For a different conclusion as to the application of the automatic stay to protect debtors ineligible for relief under 109(g), *see, e.g., In re Flores*, 291 B.R. 44 (Bankr.S.D.N.Y.2003) (holding that a filing in violation of 109(g) still triggers the automatic stay until the case is dismissed).

9. A Nebraska bankruptcy court has held the filing of a debtor ineligible for relief due to the debt limits in section 109(e) to be a nullity, *see In re Wulf*, 62 B.R. 155 (Bankr.D.Neb. 1986), but this case was promptly overruled by the Eighth Circuit in *Rudd v. Laughlin*, 866 F.2d 1040 (8th Cir.1989).

10. While every determination of eligibility under 109(e) is not extraordinarily complex, the precise debt limitations do require evidence

in the difficulty that the bankruptcy court had in the present case in determining whether the Debtors' debt qualified under 109(e). The court's ruling depended on a long and difficult decision as to whether the Pennsylvania court's judgment was liquidated for purposes of determining eligibility. Because of the complexity that is often involved in determining eligibility under 109(e), bad faith failings are also less of a concern, as evidenced by the present case. Although the bankruptcy court eventually found the Debtors to be ineligible for relief under Chapter 13, the Debtors were entitled to protection under Chapter 11. (Decision and Order, June 12, 2002.) Thus, the worst abuse inflicted by the Debtors' erroneous filing was the time spent converting the case to another chapter under Title 11, a possibility anticipated by Congress in drafting the Code. *See* 11 U.S.C. § 348. This is a small inconvenience compared to the time and resources spent by bankruptcy courts in dealing with abusive filings by debtors who are not eligible for bankruptcy relief under *any* chapter of Title 11 due to their violation of section 109(g).

Judge Krumm's expansion of his reasoning in *McKay* to the present case is an unwarranted step that undermines the essential role that Congress provided for the automatic stay in the Bankruptcy Code. While a debtor who is barred from any of the protections of Title 11 under section

109(g) may be an exception to the rule, section 362(a) of the Code dictates that the automatic stay comes into effect when a petition in bankruptcy is filed, with no consideration of the debtor's ineligibility for relief under a specific chapter. However, the bankruptcy court's error lies in its reasoning, not in its ruling that the Pennsylvania court's entry of final judgment is valid and enforceable. The Pennsylvania court's entry of final judgment should be valid and could have been rendered valid by order of the bankruptcy court under section 362(d) of the Code.

■ When the Pennsylvania trial court entered an order of final judgment confirming the award of damages in the Decree Nisi, it violated the automatic stay imposed by the Debtors' bankruptcy filings. In determining whether to validate the order of a court taken in violation of an automatic stay in bankruptcy, the Fourth Circuit has looked to section 362(d) of the Code, in which a court has the discretion to annul the automatic stay for cause.[11] *See Claughton v. Mixson*, 33 F.3d 4 (4th Cir.1994); *In re Robbins*, 964 F.2d 342 (4th Cir.1992); *see also In re Long Bay Dunes Homeowners Ass'n, Inc.*, 246 B.R. 801 (Bankr.D.S.C.1999); *In re Atlantic Ambulance Assoc., Inc.*, 166 B.R. 613 (Bankr.E.D.Va.1994); *In re Claughton*, 140 B.R. 861 (Bankr.W.D.N.C.1992). The language of 362(d), in allowing a court to "annul" the stay, permits a court to lift a

in every case to establish the amount of the debt. Thus, even simple cases will require some evidence and some deliberation by the court. This small effort still requires more than an initial determination of ineligibility under 109(g), which can often be determined at the initial stages of a case without hearing evidence.

11. There has been some debate among circuits about whether an action taken by a creditor in violation of an automatic stay is void or merely voidable. *See In re Pierce*, 272

B.R. 198 (Bankr.S.D.Tex.2001). The Fourth Circuit has not chosen a side in this debate. *See Winters v. George Mason Bank*, 94 F.3d 130, 136 (4th Cir.1996). However, the answer to the question is not necessary to resolve the present dispute, as courts in the Fourth Circuit that have held an action in violation of the automatic stay to be void have still allowed retroactive annulment of the stay to validate the void actions. *See, e.g., In re Lampkin*, 116 B.R. 450, 453 (Bankr.D.Md. 1990).

stay retroactively. *See, e.g., In re Scott,* 260 B.R. 375, 381 (Bankr.D.S.C.2001); *In re Boswell,* 206 B.R. 421. The three factors to be considered in lifting a stay for cause under section 362(d) are "(1) whether the issues in the case involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court." *In re Robbins,* 964 F.2d at 345; *In re Claughton,* 140 B.R. at 867–68. In weighing these factors, annulment is the exception to the rule due to the importance of the automatic stay. *See In re Scott,* 260 B.R. at 381. However, bankruptcy courts have wide discretion in weighing the factors and determining what constitutes cause to annul the stay. *In re Robbins,* 964 F.2d at 345; *Claughton,* 33 F.3d at 5; *In re Scott,* 260 B.R. at 381.

■ In the present case, a weighing of the factors supports retroactively annulling the automatic stay to validate the Pennsylvania court orders finalizing the Decree Nisi. The Pennsylvania civil suit involved a dispute between the fiduciaries of a Pennsylvania corporation that turned on questions of Pennsylvania state law. The lawsuit spanned almost a year and a half, culminating in a trial of several days and the issuance of an Opinion, Adjudication, and Decree Nisi on October 12, 2001, finding the Debtors liable in the amount of $611,119.24. As the bankruptcy court noted in its order dismissing the Debtors' Chapter 13 petitions, Rule 227.1 of the Pennsylvania Rules of Civil Procedure requires post-trial objections to the decision of a Pennsylvania trial court to specify grounds for relief in order for the trial court to award such relief. (Decision and Order, April 3, 2002, at 14.) The Debtors' only timely-filed objections pertained to the admission of certain exhibits into evidence, the ownership of a computer program, and a dissolution of the preliminary injunction. *Id.* at 15. As a result of the failure of the Debtors to object to the award of damages and the central judgment of the trial court, the bankruptcy court concluded that the Pennsylvania trial court had no authority to change the award of damages. *Id.* Therefore, the Decree Nisi was, for all practical purposes, final. The trial court's only action taken after the filing of the Debtors' petitions in bankruptcy was to affirm this essentially final decision, which it did without knowledge of the Debtors' bankruptcy filing.

This Court is as troubled as the bankruptcy court[12] at the prospect of voiding

---

12. In oral arguments before the bankruptcy court on September 25, 2002, Judge Krumm expressed a desire to use section 362(d) to annul the automatic stay to allow the entry of judgment in Pennsylvania if he ruled in favor of the Debtors:

> ... I think the most orderly thing for me to do is at that point in time having found the final decree is void is to lift the stay to let the parties go back to state court and/or the appellate court in Pennsylvania and determine the finality of the order and whether that claim as evidenced by the decree

nisi is the amount of the claim. Because I think that's where the parties have had all of their litigation at and I don't think it's going to be judicially efficient I'll tell you right now to reinvent the litigation and relitigate here what has taken a long time in Pennsylvania. I'd rather see the parties go back, they think they've got some appeal rights, I'd rather see them go back to state court.... I think that's going to be the most judicially efficient way if I rule in favor of [the Debtors].

an order of a Pennsylvania state trial court that was issued without any knowledge of the bankruptcy filing after months of litigation, particularly when the final order of judgment was only a formality. In such a situation, principles of judicial economy and comity weigh heavily in favor of annulling the automatic stay under section 362(d) of Title 11. *See In re Robbins*, 964 F.2d at 345 (" '[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.' ") (quoting Bankruptcy Reform Act of 1978, S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836); *In re Long Bay*, 246 B.R. at 806 (finding that the "long history of litigation in the state court and numerous orders" issued by the state court support dismissing the automatic stay in the interests of comity and judicial economy); *In re Claughton*, 140 B.R. at 868 ("When pending litigation involves solely issues of state law, the bankruptcy court should favor relief from stay to allow the litigation to go forward in state court.").

There would be little harm to the Debtors' estate in retroactively annulling the stay with respect to the Pennsylvania court's entry of judgment, as the bankruptcy court has control over the current Chapter 11 petition filed by the Debtors, and an automatic stay currently exists to prevent collection efforts. *See In re Robbins*, 964 F.2d at 346. Therefore, the factors identified by the Fourth Circuit in determining whether annulment is proper

under section 362(d) favor annulment of the stay.

Instead of relying on an incorrect interpretation of the automatic stay, the bankruptcy court should have annulled the stay in order to validate the Pennsylvania court's entry of final judgment. Despite the flawed analysis of the bankruptcy court, the effect of the court's ruling was an acceptable and proper result under section 362(d). Therefore, for reasons different than those stated by the bankruptcy court, the orders of the bankruptcy court issued on November 29, 2002, and January 7, 2003, are affirmed.

**B**

■ The second question on appeal is whether the bankruptcy court erred in ruling that the order of dismissal on April 3, 2002, terminated the automatic stay. This would ordinarily be a simple question of law, if it were not for the bankruptcy court's subsequent order converting the Debtors' dismissed Chapter 13 cases to cases under Chapter 11. (Decision and Order, June 12, 2002.) In the conversion order, the court attempted to explain how it was possible to covert a dismissed case:

> It may appear illogical to grant a motion to convert a dismissed case since at first blush there would appear to be no case to convert. However, upon the filing of a motion to alter or amend a dismissal order, the life of a fatally defective Chapter 13 case maintains at least some modicum of viability until the court rules on any pending motions to alter or amend and the ten-day period to appeal expires.

(Hearing, September 25, 2002, at 28.) Why Judge Krumm ruled in favor of the Debtors following this hearing without an analysis of section 362(d) is an unanswered question. However, he certainly felt strongly about his

desire to validate the state court judgment, as he amended his order of October 31, 2002, to declare that no automatic stay existed, thereby validating the judgment of the Pennsylvania court.

*Id.* at 3 n. 3. The bankruptcy court's action certainly does appear illogical, as section 348 requires a "case" to exist under a chapter before conversion may take place. This inconsistency has understandably led to disagreement among the parties as to the effect of the bankruptcy court's orders on the automatic stay.[13] Ehrlich argues that the dismissal order terminated the automatic stay. The Debtors argue that the issuance of a conversion order under section 348(a) requires the automatic stay to date back to the original date of filing, and, as there was always a case with "some modicum of viability" from the filing of the original Chapter 13 petition, the automatic stay has been in effect continuously from the date of the original filing, December 12, 2001, to the present.

Had only the conversion order or the dismissal order been entered, there would have been no disagreement as to the effect of each order. Section 362(c)(2)(B) of the Bankruptcy Code states unambiguously that the automatic stay terminates when "the case is dismissed." 11 U.S.C. § 362(c)(2)(B). Thus, had the bankruptcy court dismissed the case and refused to convert it, the automatic stay would have terminated on April 3, 2002, the date of the official order of dismissal. However, if the bankruptcy court had chosen to convert the case rather than dismiss it, section 348(a) of the Code dictates that the date of the filing of the petition and thus the date of the automatic stay is not changed by conversion. 11 U.S.C. § 348(a). Therefore, the automatic stay would have remained in place when the case was converted.[14] The confusion arises when the two orders are considered together.

The first of the two conflicting orders issued by the bankruptcy court was the order of dismissal. Section 362(c)(2)(B) of the Bankruptcy Code, in dictating termination of the automatic stay when a case is dismissed, does not provide a "modicum of viability" exception for appeals or motions to reconsider. Thus, if a debtor does not seek the protection of a stay pending appeal or a ruling on the motion to reconsider, creditors are free to take action to enforce their rights in the debtors' assets from the moment that the dismissal order is entered. *See Constructivist Foundation, Inc. v. Bonner,* 254 B.R. 863 (D.Md. 2000) (holding that dismissal of debtor's case allowed sale of property despite the mooting effect on debtor's appeal); *see also Fish Market Nominee Corp. v. Pelofsky,* 72 F.3d 4, 6 (1st Cir.1995) (holding that the stay under 362(a) "expired as soon as the judgment . . . was entered."); *In re Nagel,* 245 B.R. 657 (D.Ariz.1999) ("A review of the case law provided by the parties and the court's own research reveals no basis in law for the proposition that the automatic stay continues after dismissal of a case."); *Weston v. Cibula,* 101 B.R. 202, 204–05 (Bankr.E.D.Cal.1989) ("[T]he automatic stay is immediately terminated at the moment the order dismissing the case is entered on the docket."). This conclusion best effectuates the intent of Congress as evidenced by section 349(b) of the Code, which governs the effect of a dismissal order: "The basic purpose of this subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." 11 U.S.C. § 349(b) (Revision Notes and Legislative Reports). Termination of the automatic stay at the moment a dismissal order is entered is the quickest

---

13. It is also not surprising that this is a question of first impression.

14. The continuation of the automatic stay upon conversion has already been discussed in detail in section II.A. of this opinion.

and most effective means of restoring debtors and creditors to their status quo positions prior to the case in bankruptcy.

When the bankruptcy court entered its order of dismissal on April 3, 2002, the automatic stay was immediately terminated, regardless of the rights of appeal and rights of reconsideration held by the Debtors. Apparently recognizing the immediate effect of the dismissal order, the Debtors made a belated request for a stay pending appeal or reconsideration [15], but the bankruptcy court denied the request on May 7, 2002. (Order Denying Stay, May 7, 2002; Hearing, May 3, 2002, at 22–23.) Ehrlich was therefore free beginning April 3, 2002, to seek to enforce his rights as a creditor.

■ Having determined that the automatic stay terminated on April 3, 2002, the Court must still determine the effect of the bankruptcy court's order of conversion on May 31, 2002. Because the bankruptcy court had already dismissed the case, it was impossible for the court to then convert the case under section 348, as no "case" existed for the court to convert.[16] When the bankruptcy court realized that it had made an error in dismissing the case rather than converting it, it should have allowed the Debtors to file a new petition for relief under the appropriate chapter of Title 11, in this case Chapter 11. Once the Debtors filed a new petition under Chapter 11, a new automatic stay would have come into effect to protect the Debtors' estates.

■ While the bankruptcy court's orders were inconsistent, its ruling that the automatic stay terminated upon the issuance of the order of dismissal was correct. There is no practical difference in allowing the Debtors to refile to receive the protections of a new automatic stay as opposed to the actions taken by the bankruptcy court, as the court issued a new automatic stay on May 23, 2002, in order to protect the interests of the parties while it considered the Debtors' motions for reconsideration. Therefore, the bankruptcy court's holding in its order of October 31, 2002, that the automatic stay terminated when the dismissal order was issued, is affirmed. The automatic stay terminated on April 3, 2002, and was reinstated by the bankruptcy court on May 23, 2002. During this period, Ehrlich was free to take action to enforce the Pennsylvania judgment.

### Conclusion

For reasons different than those stated by the bankruptcy court, the bankruptcy court's holdings in its orders of October 31, 2002, November 29, 2002, and January 7, 2003, are AFFIRMED. The final judgment of the Pennsylvania trial court is therefore valid, and Ehrlich was free to enforce the judgment when the automatic stay was lifted on April 3, 2002, with the issuance of the dismissal order. This right to enforce ended on May 23, 2002, with the issuance of a new stay by the bankruptcy court.

### ORDER

This matter is before the Court on an appeal from the bankruptcy court's orders dated October 31, 2002, November 29, 2002, and January 7, 2003. For reasons explained more fully in the accompanying Memorandum Opinion, it is hereby

---

**15.** The Debtors submitted a motion for entry of a stay pending motions to alter or amend judgment on May 2, 2002, almost a month after the dismissal order had been entered.

**16.** Normally, conversion is considered as an alternative to dismissal, and is therefore decided prior to the issuance of an order to dismiss.

**ADJUDGED AND ORDERED**

that, for reasons different than those enunciated by the bankruptcy court, the orders are **AFFIRMED.**

The clerk of court is directed to send certified copies of this Order and accompanying Memorandum Opinion to all counsel of record.