**In re Donald O. SCOTT, Debtor.**

No. 00–07468/W.

United States Bankruptcy Court, D. South Carolina.

Feb. 1, 2001.

---

Jan M. Baker, King and Dalrymple, PA, West Columbia, SC, for debtor.

Gretchen D. Holland, Columbia, SC, for creditor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court on Columbia (SC) Teachers Federal Credit Union's (the "Credit Union") Motion to Modify and Lift Stay and the Amended Motion to Annul, Modify and Lift Stay (collectively, the "Motions"), respectively filed on November 2, 2000 and December 5, 2000. The Credit Union seeks a retroactive annulment of the automatic stay

imposed pursuant to 11 U.S.C. § 362[1] to validate the post-petition perfection of a mortgage on Donald O. Scott's ("Debtor") home. Debtor filed Objections to said Motions on November 19, 2000 and December 6, 2000 respectively. In the Objections, Debtor requested the entry of an order by the Court denying the Motions and further requested that the Court find that the post-petition recordation of the mortgage constituted a willful violation of the automatic stay and that sanctions be imposed against the Credit Union pursuant § 362(h). After considering the pleadings in the matter and the arguments of the parties and evidence presented at the hearing on the Motions, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52, made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7052.[2]

## FINDINGS OF FACT

1. On May 3, 2000, Debtor signed a document titled "Revolving Credit Mortgage", whereby the Credit Union agreed to make revolving advances to Debtor to the extent of $12,200 in exchange for a mortgage on Debtor's property.

2. Subsequent to its execution, the Credit Union forwarded the mortgage for filing in the Lexington County Register of Deeds in Lexington, South Carolina, but failed to include necessary information or to remit the correct amount for payment of recording fees. On August 18, 2000, the RMC office notified the Credit Union of the filing deficiencies.

3. On August 25, 2000, Debtor filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code.

4. Credit Union properly recorded its mortgage with the Lexington County Register of Deeds on September 5, 2000, after the filing of Debtor's Chapter 7 petition.

5. Debtor's Schedule A reflects that Debtor owns only the house and lot located at 3632 Harrogate Road, Columbia, on which the Credit Union's mortgage attached. According to Debtor's Schedules, the property is valued at $85,000.00, and no other evidence was introduced to contradict said value.

6. It is undisputed that there are two prior mortgages of record against Debtor's property, as reflected in Debtor's Schedule D. In fact, according to the Schedules, Principal Residential Mortgage has a first mortgage lien in the amount of $73,000.00, and Household–CPI holds a second mortgage in the amount of $18,100.00. According to the values set forth in the Schedules, there is no equity in the property for the estate, and Debtor has not claimed a homestead exemption in the property pursuant to § 522(b) and S.C.Code Ann. § 15–41–30(1).

7. On November 2, 2000, Credit Union filed a Motion to Modify and Lift Stay pursuant to § 362(d). On November 9, 2000, Debtor filed an objection, alleging that the Credit Union's post-petition recording of the mortgage constituted a violation of the automatic stay. Debtor further responded that the Credit Union's claim, due to lack of perfection against third parties, should be unsecured.

8. On December 5, 2000, Credit Union filed an Amended Motion to Annul, Modify and Lift Stay, asking the Court to annul the stay and retroactively validate its post-

---

1. Further references to the Bankruptcy Code shall be by section number only.

2. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

petition recording of the mortgage. Debtor responded to the Amended Motion on December 6, 2000, maintaining that cause does not exist under § 362(d) to warrant the annulment of the automatic stay and requesting the denial of the Amended Motion and an award of attorney's fees, costs, and other appropriate damages in connection with the alleged willful violation of the automatic stay pursuant to § 362(h).

9. The Trustee has not filed any objections to the Credit Union's Motions.

## CONCLUSIONS OF LAW

The Credit Union requests that the Court grant the Motion to annul the automatic stay to validate the post-petition recordation of its mortgage on Debtor's property. In turn, Debtor asserts that the Credit Unions' post-petition recording of the mortgage document constituted a violation of the automatic stay. Furthermore, Debtor countered the Credit Union's request by maintaining that factual issues exist relating to the execution and validity of the mortgage at issue [3] and further asserting that, even if the lien is valid, it is subject to being avoided by this Court under § 544.

At the hearing on the Motions, Debtor argued that if the automatic stay was annulled in this case, the Credit Union would be permitted to better its position post-petition in that its lien would be perfected against third parties. Debtor further argued that the post-petition validation of the recording would "rob" Debtor of his ability to file an avoidance action under § 544. Thus, the first issue to be analyzed is whether, under § 544, Debtor may assert the strong-arm powers of a Chapter 7 trustee to avoid the Credit Union's mortgage as an unperfected lien.

■ Section 544 provides in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor to any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial line, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

---

**3.** At the hearing on the Motions, Debtor's counsel informed the Court that Debtor disputed the validity of the Revolving Credit Mortgage in that, among other things, it was not properly witnessed and notarized. As to Debtor's concerns dealing with the validity of the mortgage document, the Court notes that they are issues to be raised and decided by a State Court in the context of a collection or foreclosure action and do not effect the Court's decision on the Motions presently before it.

Debtor argues that the Chapter 7 Trustee could have avoided the Credit Union's unrecorded mortgage and that Debtor has standing to assert the same avoiding powers under that section if the Trustee chooses not to do so. The Court disagrees with Debtor's argument and interprets the language of § 544 avoidance powers to ordinarily apply only to a bankruptcy trustee.

■ As the Supreme Court recently stated in the case of *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), in interpreting the language of a statute, "we begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says.'" Id. at 1947, 120 S.Ct. 1942. In *Hartford Underwriters*, the Supreme Court was faced with an adversary proceeding filed by the Chapter 7 debtor's workers compensation insurer against a secured creditor seeking the payment of post-petition premiums. The petition sought recovery pursuant to § 506(c) which provides that *"[t]he trustee* may recover from property securing an allowed secured claim the ... costs and expenses of preserving, or disposing of, such property ...."* (emphasis added). By unanimous vote, the Supreme Court held that the express language of § 506(c) does not provide an administrative claimant of a bankruptcy estate an independent right to seek payment of its claim, and in so deciding, the Court emphasized that " '[w]here a statute ... names the parties granted [the] right to invoke its provisions, ... such parties only may act.' " Id. (quoting

2A N. Singer, Sutherland on Statutory Construction § 47.23, p. 217 (5th ed.1992)). This Court has previously expressed similar views in holding that where a statute only designates a particular party as being empowered with certain authority or duties, only that party may exercise such rights. In In re Kest, C/A No. 99–06864–W (Bankr.D.S.C.1999), in fact, the debtor had filed a motion for approval of assumption of a lease pursuant to § 365; however, the Court denied the debtor's motion to assume and concluded that "[i]n a Chapter 7 case, a debtor has no authority to exercise the option of assuming or rejecting leases. It is solely the trustee's prerogative to be utilized for the benefit of the estate." *Id.* (citing *In re Knight*, 211 B.R. 747, 747 (Bankr.D.Or.1997)).[4]

On its face, § 544 provides the trustee with avoidance powers without indicating that any other party may also utilize its avoidance provisions.

Courts dealing with this issue in the context of Chapter 7 cases have held that, ordinarily, a debtor does not have standing under the strong-arm provision of § 544(a). *See, e.g. Wade v. Midwest Acceptance Corp. (In re Wade)*, 219 B.R. 815, 819 (8th Cir. BAP 1998); *Mulligan v. United States (In re Mulligan)*, 234 B.R. 229, 234 (Bankr.D.N.H.1999); *Humphrey v. Herridge (In re Humphrey)*, 165 B.R. 578, 579 (Bankr.D.Md.1993); *Goebel v. United States (In re Goebel)*, 153 B.R. 593 (Bankr.M.D.Fla.1993). Those cases indicate that a debtor has standing to bring an avoidance action only when allowed to do so under the requirements of § 522(h).[5]

---

4. The express language of § 365 restricts the authority to assume or reject a lease to the trustee by providing, in part, that *"the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."*

5. Section 522(h) provides:

The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548,

Section 522(h), which has to be read in conjunction with § 522(g), "allows a debtor to avoid prepetition preferential transfers for the benefit of the debtor if the property would have been exempt and was not voluntarily transferred, and if, further, the trustee has not sought such avoidance." *In re Wade*, 219 B.R. at 819; *see also In re Humphrey*, 165 B.R. 578 (Bankr.D.Md. 1993) (holding that a Chapter 7 debtor must satisfy the following five-pronged test in order to have standing to maintain an avoidance action: "(a) the debtor could have exempted the property which is the subject of the alleged preference; (b) the transfer would have been avoidable by the trustee under Section 547; (c) the trustee has not attempted to avoid the transfer; (d) the transfer was not a voluntary transfer of property by the debtor; and (e) the property was not concealed by the debtor."). However, the Court finds that the requirements outlined above are not met in this case, in that, among other things, the mortgage at issue was consensual and no exemption in the mortgaged property was claimed by Debtor. Thus, the Court finds that Debtor has no standing to pursue a § 544 action in this case. While other Bankruptcy Code provisions, such as §§ 1107 and 1203, vest the Chapter 11 or 12 debtor-in-possession with the trustee's avoidance powers under § 544, the Code contains no similar broad grant to Chapter 13 or Chapter 7 debtors, instead providing only limited avoidance rights pursuant to § 522(g) and (h) to debtors in the absence of an action by the trustee.

Likewise, courts faced with the issue of whether Chapter 13 debtors may avail themselves of the § 544(a) strong-arm powers are evenly split. A number of courts have held that a Chapter 13 debtor

has standing to assert the avoiding power granted by § 544. *See, e.g. Thacker v. United Companies Lending Corp.*, 256 B.R. 724, 728–29 (W.D.Ky.2000); *In re Bonner*, 206 B.R. 387, 389 (Bankr.E.D.Va. 1997); *Freeman v. Eli Lilly Fed. Credit Union*, 72 B.R. 850, 853–55 (Bankr. E.D.Va.1987). However, there is a contrary line of cases which hold that Chapter 13 debtors may not avail themselves of the trustee's § 544(a) strong-arm avoidance powers. *See, e.g. Stangel v. U.S. (In re Stangel)*, 219 F.3d 498, 501 (5th Cir.2000) (holding that debtor lacked standing to seek avoidance of IRS' tax liens pursuant to § 545(2)); *Miller v. Brotherhood Credit Union (In re Miller)*, 251 B.R. 770, 772 (Bankr.D.Mass.2000) ("I find persuasive those cases which do not permit a Chapter 13 debtor to bring an independent avoidance action. I agree that, absent a specific grant of authority in the Bankruptcy Code, a Chapter 13 debtor cannot bring an avoidance action independent of section 522(h)."); *Hacker v. Hodges (In re Hacker)*, 252 B.R. 221, 223 (Bankr.M.D.Fla. 2000); *In re Carter*, 2 B.R. 321 (Bankr. D.Colo.1980).

Even the cases granting a Chapter 13 debtor standing to pursue § 544 actions recognize the difference between a Chapter 13 and a Chapter 7 case and imply that a different conclusion would have been reached had the case been a Chapter 7. In the Chapter 13 case of *In re Freeman*, 72 B.R. 850 (Bankr.E.D.Va.1987), for example, the court concluded that in cases such as the one before it, where the trustee did not pursue an avoidance action, "the debtor himself may exercise the trustee's 'strong arm' powers under § 544(a)." *Id.* at 854. However, the court went on to explain:

549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

The Court's conclusion is based in large part upon the different practical role which the trustee plays in a chapter 13 case. *Unlike the trustee under Chapter 7 or Chapter 11,* the Chapter 13 trustee's functions are restricted to essentially administrative matters. His basic role is to review plans, advise the Court with respect to plans and act as a disbursing agent under confirmed plans; therefore[,] he does not possess the full panoply of weapons available to a trustee under the other chapters.

. . .

. . . It is the debtors who determine whether to remain in Chapter 13 and decide how much money is to be paid to the trustee for distribution to creditors. Therefore, it is only logical that they should be extended the powers possessed by the trustee which work toward enhancing their own bankruptcy estate.

*Id.* at 854 (citations omitted); *see also In re Driver,* 133 B.R. 476, 478 (Bankr. S.D.Ind.1991) (holding that a Chapter 13 debtor lacks standing to sue trustee's avoidance power except to the extent permitted by the Bankruptcy Code in § 522(g) and (h) and noting the differences between Chapter 7 and Chapter 13 cases). Thus, even some cases holding that a Chapter 13 debtor has standing to pursue § 544(a) actions imply that such authority granted to Chapter 13 debtors is due to the role and functions exercised by a Chapter 13 trustee. Therefore, in the context of this Chapter 7 case, the Court finds the Debtor has no standing to pursue a § 544 action.

▪ Having decided that Debtor may not bring a § 544 action in this case, the court must next decide whether the stay should be annulled retroactively. Section 362(d) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) . . ., such as by terminating, *annulling,* modifying, or conditioning such stay." § 362(d). Thus, § 362(d) allows bankruptcy courts to annul the automatic stay retroactively to validate actions that were taken in violation of such stay. As noted in the case of *In re Behr,* 78 B.R. 447 (Bankr.D.S.C. 1987),

"In addition to the obvious power to 'terminate' the stay, [362(d) ] also gives the bankruptcy court the power to 'annul' the stay. The difference between the two is that an order annulling the stay could operate retroactively to the date of the filing of the petition which gave rise to the stay, and thus validate actions taken by the party at a time when he may have been unaware of the existence of the stay. On the other hand, an order terminating the stay would be operative only from the date of its entry."

*Id.* at 449 (quoting *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir.1984)); *see also In re Siciliano,* 13 F.3d 748, 751 (3d Cir.1994) ("[T]he inclusion of the word 'annulling' in the statute indicates a legislative intent to apply certain types of relief retroactively and validate proceedings that would otherwise be *void ab initio.*").

▪ Courts are in agreement that allowing retroactive relief from the stay is the exception rather than the rule. *Soares v. Brockton Credit Union,* 107 F.3d 969, 977 (1st Cir.1997); *First American Title Ins., Co. v. Lett (In re Lett),* 238 B.R. 167 (Bankr.W.D.Mo.1999). However, the courts are also in agreement that the determination of whether relief from the stay should be granted retroactively is within the "wide latitude" of the court in that such decision should be made on a case-by-case basis. *See, In re Syed,* 238 B.R. 133, 144 (Bankr.N.D.Ill.1999); *In re Soares,*

107 F.3d at 977 ("We do not suggest that we can write a standard that lends itself to mechanical application. Each case is *sui generis* and must be judged accordingly."). Some of the compelling circumstances that have been listed by courts as sufficient to grant annulment of the stay are:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the say; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*In re Lett,* 238 B.R. 167, 195 (Bankr. W.D.Mo.1999). This list is not exhaustive, but rather sets forth some examples of possibilities warranting the annulment of the stay.

■ The Court finds that in this case, "cause" exists as required by § 362(d)(1) to annul the stay retroactively to allow the perfection of the Credit Union's mortgage. *See, e.g. In re Crown Victoria, LLC,* C/A No. 99–10542–W (Bankr.D.S.C.1/3/2000) (finding that "cause" existed to annul the stay retroactively to the filing of the petition where in an attempt to stop foreclosure sale on property, corporate debtor, through its managing member, filed a pro se petition immediately prior to the foreclosure sale). First, while the mortgage at issue was ultimately filed on September 5,

it had been executed and originally sent for filing well before Debtor filed for Chapter 7 relief. Moreover, the Certificate of Service of Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines indicates that notice of Debtor's bankruptcy filing was served by mail on the Credit Union on August 30, 2000 from the Bankruptcy Noticing Center in Virginia. Given that September 4 was Labor Day, it is inferable that the mortgage had been mailed to the RMC office at on or about September 1, 2000; therefore, it appears likely that the Notice and the mortgage passed in the mail, and that the Credit Union did not have notice of Debtor's bankruptcy filing when the mortgage was recorded. Additionally, there is no equity in the property and no reorganization by the debtor is being attempted in this Chapter 7 case. Therefore, the circumstances of this case appear to meet at least three of the factors stated above for annulling the automatic stay.

Another factor weighing in favor of retroactive annulment in this case is the lack of any harm to any party in interest. Because there is no equity in the property, the interests of unsecured creditors or any alleged judgment creditor will not be harmed by allowing a perfection of the mortgage interest. Furthermore, despite the fact that the mortgage was not recorded until after the filing of the bankruptcy, the mortgage is good against Debtor. Because Debtor knew of the mortgage's existence in that he signed it and agreed to be bound to it on May 3, 2000, filing is unnecessary to perfect as to him; thus, his position is actually unchanged by a validation of the Credit Union's filing.[6] Given these facts, the Court finds that sufficient

---

**6.** As stated earlier, the Court acknowledges the fact that there are some issues as to the validity of the mortgage; however, those issues are to be decided in a State Court forum and do not have an impact on the Court's holding as tot he Motions before it. If the Credit Union were to proceed with a foreclosure action, Debtor may properly raise the validity issue before the State Court where such action would be pending.

grounds exist to retroactively annul the automatic stay under both § 362(d)(1) and (2).

In light of this Court's ruling that the stay should be annulled retroactively, Debtor's claim for sanctions and attorneys' fees must be denied. It is therefore,

**ORDERED** that the Credit Union's Amended Motion to Annul, Modify and Lift Stay is granted and the automatic stay is annulled to validate the filing the Credit Union's Mortgage.

**IT IS FURTHER ORDERED** that Debtor's request for sanctions and attorneys' fees pursuant to § 362(h) is denied.

**AND IT IS SO ORDERED.**