**In re Mary WILL, Debtor.**

**Mary Will, Plaintiff,**

v.

**Ford Motor Credit Company, Defendant.**

**Bankruptcy No. 02 B 36426.**
**Adversary No. 03 A 00646.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 20, 2003.

David T. Lin, for Plaintiff.

Michael Sherman, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

JACQUELINE P. COX, Bankruptcy Judge.

Before this Court is chapter 13 debtor Mary Will's complaint for compensatory and punitive damages and turnover of her 1998 Chevrolet Cavalier (the "Cavalier") against Ford Motor Credit Company ("FMCC"). The complaint alleges a willful violation of the stay pursuant to 11 U.S.C.

§ 362(h) and a right to obtain an order requiring FMCC to return the Cavalier to the control of her bankruptcy estate pursuant to 11 U.S.C. § 542(a). The Court has jurisdiction over this matter, a core proceeding, pursuant to 28 U.S.C. § 157(b)(1)-(2) and § 1334. *See In re Hooker Investments*, 116 B.R. 375, 382 (Bankr.S.D.N.Y.1990). FMCC repossessed the car in November 2002; it later returned it to her in April 2003 after this complaint was filed.

Related matters also pending are FMCC's motion to annul the automatic stay in this Chapter 13 case and its objection to the confirmation of Will's chapter 13 plan.

### Findings of Fact and Background

Will filed her current chapter 13 case on September 19, 2002 (the "Present Chapter 13"). Several disputes in the Present Chapter 13 can only be explained with reference to events in Will's prior chapter 13 case ("Prior Converted Chapter 13"), which she filed on December 16, 1998, and converted to a chapter 7 case on March 25, 2002. The chapter 7 case culminated in a discharge of her unsecured debt on August 30, 2002, and an order closing that original case on September 3, 2002—less than one month before Will filed the Present Chapter 13 case. The Prior Chapter 13, after being confirmed on March 9, 1999, dealt with secured claims in the following manner:

> Property of the estate shall revert in the Debtor upon confirmation of the Plan. Upon completion of payment of the secured portion of any claim, the property securing said claim shall vest in the debtor free and clear of any lien, claim or interest of a secured creditor. If the security is property for which a release of title is necessary, upon satisfaction of said secured claim, the secured creditor shall furnish a release of said title to the debtor.

FMCC did not object to the confirmation of the plan in the Prior Converted Chapter 13 case, even though it contained the title-release language.

In the Prior Converted Chapter 13, Will listed FMCC as a creditor holding a secured claim in the amount of $14,166.78 for her Cavalier. Between March 31, 1999, and January 31, 2002, the chapter 13 standing trustee distributed the debtor's funds to FMCC on behalf of the secured claim, paying the allowed secured claim in full. The "Trustee's Final Report and Account" of the chapter 7 trustee in the converted case indicated the same in addition to making a finding of "no assets." The same "Trustee's Final Report and Account" also indicated that FMCC did not file an unsecured claim asserting that the value of the Cavalier was insufficient to support its total claim amount. In spite of the fact that FMCC had been paid its allowed secured claim in full by January 31, 2002, it failed to release the lien on the certificate of title at any time during or after the Prior Converted Chapter 13, instead claiming that a lien securing the full amount of the debt survived the former case due to the fact that Will had not completely paid off all of her obligations under her chapter 13 plan.

Believing that her debt to FMCC and the related lien were extinguished by the Prior Chapter 13, Will and her attorney did not schedule FMCC as a creditor in her Present Chapter 13. Consequently, FMCC had no formal or actual notice of the bankruptcy case currently before this Court when, on or around November 8, 2002, it repossessed Will's Cavalier, claiming that Will still owed a fully secured balance of $4,034.23 plus interest. Will's attorney soon informed FMCC of the pendency of the Present Chapter 13 and demanded that the vehicle be returned; however, FMCC refused to do so at that time.

■ Will's attorney originally filed the instant adversary proceeding as a § 362(h)

motion to recover damages for the willful violation of the automatic stay in the Present Chapter 13, including reimbursement for $300 of expenses for visiting the doctor. A subsequent "Amended Motion for Damages Pursuant to Section 362(h)" additionally alleged a violation of the chapter 7 discharge injunction from her Prior Converted Chapter 13 and requested the Court to order the immediate return of her Cavalier or to award actual damages in the amount of $14,166.78 in lieu of the vehicle. FMCC objected to the motion because it demanded the recovery of money or property but was not presented in the form of an adversary proceeding as required by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7001(1). *See also In re Perkins,* 902 F.2d 1254, 1258 (7th Cir. 1990); *Brown v. Addison (In re Brown),* 210 B.R. 878, 884–85 (Bankr.S.D.Ga.1997). The Court sustained FMCC's objection due to the added turnover request, *see* 11 U.S.C. § 542, and Will refiled the motion as a complaint initiating the adversary proceeding at bar on March 3, 2003.[1] FMCC eventually returned the car during the middle of April 2003, making the turnover action moot, but the adversary proceeding proceeded to trial on September 30, 2003 to resolve the issue of money damages and attorneys' fees.

### Conclusions of Law and Analysis

#### A. Admissibility of FMCC's Answer to First Set of Interrogatories

■ FMCC objected to the admissibility of Will's trial exhibit number two, which consisted of FMCC's "Answer to [the Debtor's] First Set of Interrogatories," on hearsay grounds, and the Court took the objection under advisement. The gist of the objection was that FMCC's attorney's out-of court written answers to interrogatories are not admissible as evidence against FMCC. The objection is overruled because Federal Rule of Evidence 801(d) provides that "[a] statement is not hearsay if—[t]he statement is offered against a party and is ... (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

#### B. Violation of the Discharge Injunction in Case 98B40443

■ Will contends that FMCC has violated the discharge injunction she received in the chapter 7 portion of her Prior Converted Chapter 13. How the repossession of Will's car violates the earlier case's discharge injunction, without more, is unclear. That is, the discharge injunction, unlike the automatic stay, operates as an injunction against conduct to collect a debt as the *personal liability* of a debtor, not as an injunction prohibiting the enforcement of *in rem* claims that remain unavoided by the Bankruptcy Code.[2] 11 U.S.C. §§ 362(a), 524(a); *Cox v. Zale Delaware,* 239 F.3d 910, 912 (7th Cir.2001); 4 **Law-**

---

1. While a proceeding to obtain relief under § 362(h) has been held not to require an adversary proceeding, *In re Forty–Five Fifty–Five,* 111 B.R. 920, 922–23 (Bankr.D.Mont. 1990); *In re Hooker Investments,* 116 B.R. 375, 378 (Bankr.S.D.N.Y.1990), a property-turnover remedy requested *in addition to the money-damages remedy* more traditionally litigated during a § 362(h) contested matter is sufficient to pull the entire dispute within the ambit of Bankruptcy Rule 7001, which clearly requires an adversary proceeding for an action to recover property.

2. Whether any portion of FMCC's lien did survive or should have survived Will's prior converted case is a separate legal issue not

rence P. King et al., **Collier On Bankruptcy** ¶ 524.02[2][d] (15th ed. rev.2003). The adjudication of a civil-contempt proceeding for violation of the discharge injunction in a former bankruptcy case would also require the debtor to reopen that case. *See* 11 U.S.C. § 350(b); *Cox v. Zale Delaware*, 239 F.3d 910, 915–17 (7th Cir.2001); 4 **Lawrence P. King et al., Collier On Bankruptcy** ¶ 524.02[2][c] (15th ed. rev.2003).

### C. Violation of the Automatic Stay in Case 02B36426

 Assuming *arguendo* that FMCC is correct in asserting that it still had a security interest that survived the Prior Converted Chapter 13, Will's interest in the Cavalier was still an asset of the bankruptcy estate in the Present Chapter 13 according to § 541(a)(1), regardless of whether FMCC had a remaining security interest in it. *See In re Robinson*, 285 B.R. 732, 737–39 (Bankr.W.D.Okla.2002) (redemption and surplus-proceeds rights were interests entitling repossessed vehicle to protection as estate property and thus were a sufficient basis for granting turnover motion); *Matter of Brown*, 210 B.R. 878, 881 (Bankr.S.D.Ga.1997) (citing *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). "The filing of the bankruptcy petition triggers the automatic stay of section 362(a), notwithstanding the lack of actual notice of commencement of the proceedings." *In re Sumpter*, 171 B.R. 835, 841–42 (Bankr. N.D.Ill.1994). The automatic stay is broad enough to protect the Cavalier regardless of whether it was subject to a lien, because § 362(a)(4) "operates as a stay ... of ... any act to create, perfect, or enforce any lien against property of the estate," while

§ 362(a)(3) "operates as a stay ... of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a); *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 681–82 (6th Cir. BAP 1999). FMCC violated the § 362(a) stay in Case 02B36426 when it repossessed Will's Cavalier in November 2002. The dispute about what amount, if any, the debtor still owes for the 1998 Chevrolet Cavalier is irrelevant as long as the vehicle was property of the debtor's second Chapter 13 bankruptcy estate and the creditor nevertheless enforced a lien against property of the estate or exercised control over property of the estate. 11 U.S.C. §§ 362(a), (h); 541(a) (defining property of the estate).

 To determine whether this violation was willful under § 362(h), the legal basis for Will's complaint, the Court must inquire whether FMCC (1) had actual knowledge of Will's Present Chapter 13 case and (2) committed a deliberate act when its agents repossessed the Cavalier. *See In re Sharon*, 234 B.R. 676, 687 (6th Cir. BAP 1999); *Expeditors Int'l v. Colortran (In re Colortran)*, 210 B.R. 823, 826 (9th Cir. BAP 1997), *affirmed in part, vacated in part on other grounds*, 165 F.3d 35 (9th Cir.1998); *In re Winters*, 1995 WL 453053, at *6–*7 (N.D.Ill.1995); *Matter of Brown*, 210 B.R. 878, 880 (Bankr.S.D.Ga. 1997); *In re Sumpter*, 171 B.R. 835, 843 (Bankr.N.D.Ill.1994); *In re Forty–Five Fifty–Five*, 111 B.R. 920, 922 (Bankr. D.Mont.1990); *In re Haan*, 93 B.R. 439, 441 (Bankr.W.D.N.C.1988); *In re Price*, 103 B.R. 989, 993 (Bankr.N.D.Ill.1989), *affirmed*, 130 B.R. 259 (N.D.Ill.1991), *affirmed and remanded*, 42 F.3d 1068 (7th Cir.1994); *Matter of Brown*, 210 B.R. 878,

requiring decision here. Ford's currently pending objection to confirmation, though, will nevertheless soon require resolution of

the issue in the current case because it asserts that it has a secured claim of at least $4,034.23.

880 (Bankr.S.D.Ga.1997). Showing that FMCC should have known about the pendency of the case, as the debtor alleges in paragraph 45 of the complaint, is not sufficient to establish a willful stay violation. However, unofficial oral or written notice of a bankruptcy filing is legally sufficient to convey knowledge of the automatic stay. *See In re Stewart*, 190 B.R. 846, 849–50 (Bankr.C.D.Ill.1996); *In re Davis*, 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987); *In re Forty–Five Fifty–Five*, 111 B.R. 920, 921 n. 2 (Bankr.D.Mont.1990). A stay violation might still be a willful one if the actor misconstrues the scope of the automatic stay and its listed exceptions or otherwise believes he is justified, because a specific intent to violate the stay is not necessary. *See In re Sharon*, 234 B.R. 676, 687–88 (6th Cir. BAP 1999); *In re Colortran*, 210 B.R. 823, 826–27 (9th Cir. BAP 1997), *affirmed in part, vacated in part on other grounds*, 165 F.3d 35 (9th Cir.1998); *In re Winters*, 1995 WL 453053, at *6–*7; *In re Alberto*, 119 B.R. 985, 993 (Bankr.N.D.Ill. 1990); *In re Forty–Five Fifty–Five*, 111 B.R. 920, 922–23 (Bankr.D.Mont.1990); *In re Sumpter*, 171 B.R. 835, 843 (Bankr. N.D.Ill.1994); *Matter of Davis*, 74 B.R. 406, 410–11 (Bankr.N.D.Ohio 1987); *cf. In re Skeen*, 248 B.R. 312, 316–17 (Bankr. E.D.Tenn.2000).

■ In this case, the evidence unambiguously shows that FMCC committed a deliberate act while repossessing; however, Will's own evidence seems to indicate that FMCC had no actual knowledge of the existence of her Present Chapter 13. Believing that her earlier bankruptcy case as a whole had extinguished her secured and unsecured debt on the Cavalier, Will did not list FMCC as either a secured or unsecured creditor in her Present Chapter 13 pursuant to Bankruptcy Rule 1007(a). This omission would have prevented the clerk from sending notice to Ford under Bankruptcy Rules 2002(a), (b), (f), and (o), which require 20 or 25 day notices to parties in interest of the order for relief, the meeting of creditors, and the time fixed for a chapter 13 plan confirmation hearing and for filing claims. This omission did initially prevent FMCC's act of repossession from being a "willful" violation of the automatic stay, instead producing a technical or inadvertent violation. *See Clayton v. King (In re Clayton)*, 235 B.R. 801, 807 (Bankr.M.D.N.C.1998) ("[A] technical violation occurs when a creditor violates the provisions of § 362(a) without knowledge that an active bankruptcy case is pending."); *In re Skeen*, 248 B.R. 312, 317 (Bankr.E.D.Tenn.2000); *In re Skaggs*, 1996 WL 33406652, at *2 (Bankr.C.D.Ill. 1996); *Matter of Brown*, 210 B.R. 878, 881 (Bankr.S.D.Ga.1997).

■ What began as a technical violation of the automatic stay, though, turned into a willful one because a creditor has an affirmative duty to remedy an automatic stay violation without court order when it learns of the existence of a debtor's bankruptcy case and receives a request to return estate property repossessed post-petition. *See Matter of Brown*, 210 B.R. 878, 881 (Bankr.S.D.Ga.1997). This conclusion becomes all the more apparent after examining a similar issue that has caused an enormous rift among federal courts across the country. This issue is whether a secured creditor must return a vehicle that was lawfully repossessed but not resold *prepetition*—either automatically or upon the Chapter 13 debtor's informal request—or else be deemed a willful violator of the stay, and at least one circuit court of appeals has gone so far as to say that the adequate-protection issue need not even be resolved for the secured creditor's refusal

to amount to such a violation.[3] *See generally In re Dillard,* 2001 WL 1700026, at *2 & nn. 2–3 (Bankr.M.D.N.C.2001). Regardless of the proper resolution of that question, though, the affirmative duty to fix the violation without unreasonable delay would certainly exist when the repossession occurs *post-petition* and the bankruptcy-filing information is later relayed to the secured creditor. *In re Skaggs,* 1996 WL 33406652, at *2 (Bankr.C.D.Ill.1996); *Matter of Brown,* 210 B.R. 878, 881 (Bankr. S.D.Ga.1997); *In re Adams,* 94 B.R. 838, 851 (Bankr.E.D.Pa.1989); *In re Belcher,* 189 B.R. 16, 17–18 (Bankr.S.D.Fla.1995); *In re Shropshire,* 25 B.R. 128, 130 (Bankr. W.D.Wash.1982); *In re Shiko,* 21 B.R. 203, 204 (Bankr.M.D.Pa.1982); *McLaughlin v. Fireman's Trust Mortgage Corp. (In re McLaughlin),* 96 B.R. 554, 559 (Bankr. E.D.Pa.1989); *In re Miller,* 10 B.R. 778, 780 (Bankr.D.Md.1981), *affirmed,* 22 B.R. 479 (D.Md.1982); *cf. In re Shealy,* 90 B.R. 176, 179–80 (Bankr.W.D.N.C.1988) ( [T]he court holds that "willfulness" can be established by inaction when it amounts to a reckless disregard of the § 362 stay.... The Commission received multiple notices, yet took no action until it was threatened with sanctions for violating the stay."); *In re Price,* 103 B.R. 989, 990–93 (Bankr. N.D.Ill.1989) (same), *affirmed,* 130 B.R. 259 (N.D.Ill.1991), *affirmed and remanded,* 42 F.3d 1068 (7th Cir.1994). The record in this matter is not clear regarding the precise date when FMCC finally

**3.** *Compare In re Sharon,* 234 B.R. 676, 682–86 (6th Cir. BAP 1999) (willful automatic stay violation when secured creditor withheld possession of repossessed car after debtor merely demanded return and offered what he deemed adequate protection; creditor must separately adjudicate adequate-protection issue with a motion under § 362(d) or § 363(e)); *Knaus v. Concordia Lumber Co. (In re Knaus),* 889 F.2d 773, 774–75 (8th Cir. 1989); *In re Colortran,* 210 B.R. 823, 825–28 (9th Cir. BAP 1997) (willful stay violation where freight forwarder claiming lien refused to deliver possession of shipment to requesting chapter 11 debtor-in-possession, even though court had not yet formally ordered turnover under § 542), *affirmed in part, vacated in part on other grounds,* 165 F.3d 35 (9th Cir.1998),

*with*
*Coleman v. Grand Nat'l Bank (In re Coleman),* 229 B.R. 428, 431–32 (Bankr.N.D.Ill.1999) (no stay violation for creditor's mere denial of return request absent definite provision of adequate protection, but redemption right does render repossessed vehicle protected estate property potentially subject to turnover provision); *Matter of Brown,* 210 B.R. 878, 882–85 (Bankr.S.D.Ga.1997) (no automatic collateral-turnover duty arises in favor of chapter 13 debtor under § 362(a)(3), which merely freezes status quo on petition date, because under § 1303 the debtor does not receive the trustee's turnover powers under § 542; rather, debtor receives trustee's limited power to use, sell, or lease estate property under § 363(b), (d), and (e) only after judicial ruling on debtor's motion and resolution of secured lender's request for adequate protection); *Barringer v. EAB Leasing (In re Barringer),* 244 B.R. 402, 405–10 (Bankr.E.D.Mich. 1999) (no violation of § 362(a)(3) when secured creditor merely refused to return truck, at least not without the chapter 13 *trustee's* successful procurement of a judicially sanctioned § 542 turnover order transferring the creditor's possessory interest to the bankruptcy estate under § 541(7)); *Spears v. Ford Motor Credit (In re Spears),* 223 B.R. 159, 165–67 (Bankr.N.D.Ill.1998) (same),
*and with*
*Bell–Tel Fed. Credit Union v. Kalter (In re Kalter),* 292 F.3d 1350, 1352–53, 1355 & n. 3, 1360 (11th Cir.2002) (no automatic stay violation for refusal to return because a vehicle repossessed prepetition is no longer debtor's property at all under Florida Certificate of Title statute; only the debtor's very limited redemption right under Florida law is protected bankruptcy-estate property); *Mfrs. & Traders Trust Co. v. Alberto (In re Alberto),* 271 B.R. 223, 227–28 (N.D.N.Y.2001) (no automatic stay violation when a vehicle repossessed prepetition was sold postpetition before any turnover-motion filing, because only the limited redemption right, not the possessory interest, was protected bankruptcy-estate property).

learned of Will's Present Chapter 13, but Will's testimony seemed to indicate that her attorney informed FMCC within a matter of a week or two. Moreover, FMCC filed its objection to confirmation of her Chapter 13 plan on January 6, 2003, but did not return Will's Cavalier until the middle of April. The lien-survival issue stemming from the prior case's effect did not need to be resolved for FMCC to remedy its stay violation, because its disputed secured claim would need to be litigated and treated one way or the other in the Present Chapter 13 plan. Furthermore, when FMCC refused to expeditiously return the Cavalier to Will once her attorney informed FMCC's agents of the pendency of Will's Present Chapter 13 and the alleged effect of the lien-release provision in the earlier case, it committed a willful violation of the automatic stay.[4]

 The Court may additionally award the debtor attorneys' fees under § 362(h) where the creditor fails to remedy a violation of the automatic stay, thereby forcing the debtor to bring a motion and incur legal costs in order to enforce his rights under the Bankruptcy Code, and some disputed authority exists for awarding attorneys' fees alone even if no other actual damages are proven. *See In re Forty–Five Fifty–Five,* 111 B.R. 920, 921, 923–24 (Bankr.D.Mont.1990) (attorneys' fees awarded even where debtors were represented *pro per*); *In re Sharon,* 234 B.R.

676, 688 (6th Cir. BAP 1999) (attorneys' fees awarded for turnover motion where creditor refused to return car repossessed *prepetition*); *In re Price,* 103 B.R. 989, 996 (Bankr.N.D.Ill.1989), *affirmed,* 130 B.R. 259 (N.D.Ill.1991), *affirmed and remanded,* 42 F.3d 1068 (7th Cir.1994); *Matter of Davis,* 74 B.R. 406, 411 (Bankr. N.D.Ohio 1987); *In re Houchens,* 85 B.R. 152, 154–55 (Bankr.N.D.Fla.1988); *Underwood v. DeLay (In re DeLay),* 48 B.R. 282, 287 (W.D.Mo.1984); *In re Conti,* 42 B.R. 122, 128 (Bankr.E.D.Va.1984); *In re Crabtree,* 31 B.R. 95, 96–97 (Bankr.S.D.Ohio 1983); *In re Womack,* 4 B.R. 632, 634 (Bankr.E.D.Tenn.1980). In *Price,* for example, the IRS's computer automatically generated and sent the chapter 13 debtor a "Notice of Intention to Levy" for past-due taxes; however, the IRS failed to respond to several of the debtor's attorney's phone calls notifying it that the "Notice" was a violation of the automatic stay. As a result, the debtor in *Price* was unable to obtain any assurance that the levy would not occur and consequently was required to incur costs for bringing a § 362(h) motion to alleviate the problem. *See Price,* 103 B.R. at 992–93, 996. The Court finds that attorneys' fees are also appropriate here. While the initial repossession of Will's vehicle by Ford may have been merely a technical violation of the automatic stay in Case 02B36426, Ford's refusal to recognize the significance of the sec-

4. This approach is consistent with that of courts that have endorsed remedies, including for "technical" or "inadvertent" violations of the stay on various theories. *See, e.g., Chase Lumber & Fuel Co. v. Koch (In re Koch),* 197 B.R. 654, 660 (Bankr.W.D.Wis.1996); *In re Bennett,* 135 B.R. 72, 77 (Bankr.S.D.Ohio 1992); *Shimer v. Fugazy (In re Fugazy Express, Inc.),* 124 B.R. 426, 429 n. 2 (S.D.N.Y. 1991); *In re Price,* 103 B.R. 989, 995–96 (Bankr.N.D.Ill.1989), *aff'd,* 130 B.R. 259 (N.D.Ill.1991), *affirmed and remanded,* 42 F.3d 1068 (7th Cir.1994); *McLaughlin v. Fire-* *man's Trust Mortgage Corp. (In re McLaughlin),* 96 B.R. 554, 559–62 (Bankr.E.D.Pa. 1989); *In re Houchens,* 85 B.R. 152, 154–55 (Bankr.N.D.Fla.1988); *In re Davis,* 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987); *In re Conti,* 42 B.R. 122, 128 (Bankr.E.D.Va.1984); *In re Gray,* 41 B.R. 759, 763 (Bankr.S.D.Ohio 1984); *Crabtree v. Veterans Admin.,* 31 B.R. 95, 96–97 (Bankr.S.D.Ohio 1983); *In re Womack,* 4 B.R. 632, 634 (Bankr.E.D.Tenn.1980); *In re Inslaw,* 76 B.R. 224, 240 (Bankr.D.D.C. 1987).

ond bankruptcy case and remedy its stay violation exposed it to liability for costs and attorney's fees under § 362(h).

### D. Money Damages for Willful Stay Violations

 The debtor's complaint requests an award of compensatory damages for the loss of use of her vehicle and for unreturned personal property stored in her car, an award of punitive damages, and an award of costs and attorneys' fees.

At trial, Will had visible trouble walking to take the stand and testified to the necessity of regular visits to her various physicians, which totaled approximately ten trips for the five months during which she did not have use of her Cavalier. The medical trips included visits to a psychotherapist she started seeing after she lost her primary mode of transportation. She also took bi-weekly trips to serve as an AA volunteer, which required round-trip CTA fare of $3.60, and needed to travel to stores for regular household shopping and to church. Assuming she went to shopping centers and to church once a week, her total number of trips during the five-month time frame was approximately 90 trips (10 + 40 + 20 + 20).

After initially using cabs as a substitute for her vehicle, Will switched to using CTA buses and occasionally road along on trips in her daughter's vehicle. For an older woman of poor health and walking ability traveling regularly during a northern Illinois winter, CTA transportation is not equivalent to having the use of one's own car. Will testified to only being able to walk half a block at a time and to being unable to stand for long periods of time. The use of CTA transportation will normally require additional walking at both ends of a trip as well as greater outdoor waiting periods for buses to arrive. Convenience equivalent to that offered by one's own vehicle is more comparable to the services of a taxicab than to a CTA bus, so the inconvenience and aggravation of being forced to use less favorable CTA transportation (or of attempting to coordinate and accommodate a family member's schedule) require the award of compensatory damages. Will's damages for obtaining less convenient alternative transportation for the five months during which FMCC wrongfully withheld her vehicle are $324 (90 multiplied by $3.60). The $3.60 figure for a single trip is less than what a typical round-trip cab-fare price would be, although the convenience of a taxicab would be more similar to the convenience of having the use of one's own car. Without more specific evidence, though, the Court cannot award a higher rate of compensatory damages for each trip.

When FMCC finally returned the Cavalier to Will in April of this year, food wrappings indicated that the vehicle had been used. Additionally, her former license plates, registration sticker, and tire jack were missing; the vehicle required service due to its inability to turn over; and the battery needed to be replaced. The Court finds that $200 is reasonable compensation for the replacement of the battery and the missing items.

As the authority cited above recognizes, an award of attorneys' fees is appropriate in this matter because Will had to resort to court action to force FMCC to remedy its stay violation by initially filing a "Motion for Damages Pursuant to 362(H)" on January 17, 2003. Instead of remedying the stay violation *at that time*, FMCC exploited every single technical flaw in this motion to require a formal trial on an adversary proceeding that did not occur for another eight months, after which time formal discovery recovered virtually no new factual information beyond those facts alleged in the original motion under

§ 362(h) and FMCC's response thereto. This delay and complication has imposed additional costs on a debtor who relied heavily on her vehicle in the first place. The debtor is hereby granted leave to submit her attorney's itemization of legal fees pertaining to the motion and adversary proceeding in this matter so that the same can be awarded in addition to the money judgment. Fees pertaining to the contested confirmation hearing may not be included in this itemization.

Finally, in considering whether punitive damages are appropriate, the Court will consider "(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." *In re Sumpter*, 171 B.R. 835, 845 (Bankr.N.D.Ill.1994) (citing *Nigro v. Oxford Development Co. (In re M.J. Shoearama)*, 137 B.R. 182, 190 (Bankr.W.D.Pa. 1992)). Also of relevance is the creditor's sophistication and knowledge of bankruptcy law and procedure. *See In re Skaggs*, 1996 WL 33406652, at *4 (Bankr.C.D.Ill. 1996). The defendant herein is intimately involved in chapter 13 bankruptcy cases every week in this Court in addition to many other U.S. bankruptcy courts across the country; yet, it failed, even in response to the original § 362(h) motion, to alleviate the effects of its repossession in violation of the stay for months, instead choosing to delay on the basis of its faulty premise that the initial inadvertence might absolve it of any and all further liability. The secured creditor here is a firmly and widely established corporation with a national presence and an unlikely candidate for provocation by a debtor who displayed little technical knowledge concerning either of her bankruptcy filings. On this record, the Court will award punitive damages in the amount of $2000.

### E. FMCC's Motion to Annul the Automatic Stay in the Present Chapter 13 Case

FMCC's motion to annul the stay is based on Will's failure to include it as a secured creditor in her current chapter 13 schedules and plan as well as on the obvious adequate-protection problems such a failure would trigger. It also alleges that she filed the Present Chapter 13 in bad faith. FMCC requests an annulment in the Present Chapter 13 so that its repossession of Will's vehicle might be retroactively validated and so that it may continue to immediately pursue enforcement of its asserted lien for $4,034.23. This validating effect that granting the motion would have inextricably ties it to the awarded money judgment in the current adversary proceeding brought under § 362(h).

"Courts are in agreement that allowing retroactive relief from the stay is the exception rather than the rule." *In re Scott*, 260 B.R. 375, 381 (Bankr.D.S.C. 2001); *see Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 977 (1st Cir.1997); *First American Title Ins., Co. v. Lett (In re Lett)*, 238 B.R. 167 (Bankr. W.D.Mo.1999), *affirmed*, 1 Fed.Appx. 599 (8th Cir.2001). The Court may weigh equitable considerations in deciding whether to annul the automatic stay, including whether the creditor who violated the stay did so willfully and whether the movant would be unfairly prejudiced by the enforcement of the stay. *See In re Scott*, 260 B.R. 375, 382 (Bankr.D.S.C.2001); *In re Bates*, 270 B.R. 455, 470 (Bankr.N.D.Ill. 2001); *In re Halas*, 194 B.R. 605, 614 (Bankr.N.D.Ill.1996).

The controversy over the survival of FMCC's lien after Will's Prior Converted Chapter 13 is a bona fide legal dispute the particulars of which had not been fully fleshed out during the initial stages of the Present Chapter 13. Notice to FMCC of

her legal position regarding the satisfaction of the lien would have been appropriate and beneficial to all; however, the lack of notice by itself does not show that the omission was designed to trick it into repossessing the vehicle in order to obtain a § 362(h) cause of action. Rather, the evidence shows that Will desperately desired to retain her vehicle and that the unresolved lien-survival issue became most apparent only after repossession. The adequate-protection problem, then, did not clearly exist at the inception of this case and will remain undetermined until the merits of the lien-survival issue are litigated, as discussed in Part F, *infra*. Ordinarily, debtors are entitled to the protections of the automatic stay at least during the initial part of their bankruptcy cases. More importantly, though, for all of the reasons detailed above, FMCC had an affirmative duty to promptly undo its automatic-stay violation, and its failure to do so resulted in a willful violation under § 362(h). The motion to annul the automatic stay in this case is therefore denied.

If FMCC eventually prevails on the lien-survival issue, it is entitled to bring a motion to modify the automatic stay prospectively and to re-allege adequate-protection grounds similar to those in the current motion to annul, if appropriate.

*F. FMCC's Objection to Confirmation*

FMCC's confirmation objection alleges that Will's chapter 13 plan should include its remaining disputed secured claim for $4,034.23 plus interest, but the plan does not include it. This objection goes to the heart of the lien-survival issue. The status of a security interest once a chapter 13 case is converted to a chapter 7 case and the debtor has already paid the § 506(a) secured claim in full is a separate legal matter which has been discussed in published opinions by various courts. *Compare In re Castro*, 285 B.R. 703, 710

(Bankr.D.Ariz.2002) *with In re Smith*, 287 B.R. 882, 884–85 (Bankr.W.D.Tex.2002). The issue is obviously tied to the issues tried in the present adversary proceeding, even if not directly related to a § 362(h) lawsuit, as Will interposed her attorney's view of the issue as an explanation for her failure to notify FMCC of her present case, and FMCC used its view of the same issue as an explanation for its repossession of her car. The most efficient procedure would have been to try the entire spectrum of legal matters in one proceeding. The lien-survival issue, however, was not in fact tried on October 2, 2003. Furthermore, the Court will proceed to set a status date for FMCC's confirmation objection so that this bankruptcy case may proceed.

The foregoing opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rules 9014 and 7052. A separate order under Bankruptcy Rule 9021 will follow.

### Order and Judgment

1. Chapter 13 debtor Mary Will is awarded a money judgment of $524 in compensatory damages and $2000 in punitive damages against Ford Motor Credit Company. She is additionally awarded her costs and attorneys' fees concerning her § 362(h) action upon submission of an itemization of the legal work performed and expenses incurred on her behalf in this matter.

2. Ford Motor Credit Company's motion to annul the automatic stay in Case 02 B 36426 is denied.

3. Ford Motor Credit Company's objection to confirmation of the debtor's most recent chapter 13 plan is set for a status hearing on December 4, 2003, at 10:30 a.m.